Peter J. BRENNAN, Secretary of Labor, United States Department of Labor,

v.

CONNECTICUT STATE UAW COMMUN-
ITY ACTION PROGRAM COUNCIL
(CAP) et al.

Civ. No. B-743.

United States District Court,
D. Connecticut.

Oct. 19, 1973.

Henry Cohn, Asst. U. S. Atty., Hartford, Conn., for plaintiffs.

William S. Zeman, Hartford, Conn., for defendants.

Alan Neigher, Bridgeport, Conn., for applicants for intervention.

MEMORANDUM OF DECISION ON MOTION TO INTERVENE

NEWMAN, District Judge.

This is a motion by three members of the defendant union to intervene as plaintiffs in an action brought by the Secretary of Labor, pursuant to § 402(b) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 482(b). The Secretary's suit seeks to set aside an election of defendant's officers and General Executive Committee members allegedly conducted

in violation of Title IV of the Act. The background facts are not in dispute.

The defendant, Connecticut State UAW Community Action Program Council (hereafter "CAP"), is a labor organization chartered by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereafter "UAW"). On September 16, 1972, CAP conducted an election of its officers, its president, vice president, recording secretary, financial secretary, and eight members of its General Executive Committee, in purported compliance with the UAW constitution adopted by the defendant. Within six days after the election, the three applicants for intervention challenged its legality by making complaint to the UAW president. After pursuit of UAW internal grievance procedures produced no relief, the applicants filed separate, timely complaints with the Secretary of Labor, pursuant to § 402(a)(2) of the Act, 29 U.S.C. § 482(a)(2), alleging violations of Title IV.[1] The Secretary investigated these complaints, pursuant to § 601 of the Act, 29 U.S.C. § 521, and to § 402(b) of the Act, 29 U.S.C. § 482(b), and found probable cause to believe that violations of Title IV had occurred during the September 1972 election, which had not been remedied by internal union procedures. The Secretary then instituted this action on April 13, 1973, against defendant CAP, seeking to set aside the election and to conduct a new election.[2] (29 U.S.C. § 482(b)). The Secretary's complaint alleges that the defendant committed two violations of the Act which affected the outcome of the September 1972 election: (1) the labor organization officers who voted as representatives of union members for officers and General Executive Committee members were elected in violation of § 401(e) of the Act, 29 U.S.C. § 481(e), because their election was not conducted in compliance with the UAW's constitution, and (2) the officers and eight General Executive Committee members were not elected by secret ballot among union members in good standing or by labor organization officers representative of such members who were elected by secret ballot in accordance with § 401(d) of the Act, 29 U.S.C. § 481(d).

On May 18, 1973, the defendant's motion to extend for sixty days the time for filing its answer was granted without objection. Thereafter the Secretary and the defendant commenced negotiations to settle this dispute in a manner that would avoid costly litigation and would provide for a new election. On July 5, 1973, before any answer had been filed, the applicants filed this motion for non-statutory intervention as of right. Rule 24(a)(2), Fed.R.Civ.P. On July 20, 1973, before the motion to intervene was heard, the parties to this action filed a stipulation for judgment.[3]

1. A fourth union member also filed a complaint with the Secretary of Labor challenging the validity of the September 1972 election conducted by the defendant. However, he has not filed an application to intervene in this post-election suit.

2. The defendant and the UAW had previously waived all defenses relating to the timeliness of this action arising under § 402(b) of the Act (29 U.S.C. § 482(b)), and had agreed that the time for instituting this suit would be extended to April 15, 1973.

3. The pertinent provisions of the proposed stipulation provide in part:
   2. The parties, in settlement of this action without the necessity of a trial, hereby agree and stipulate that defendant will conduct a new election . . . at its next regularly scheduled convention in September 1974. . . .

3. With the understanding that the defendant labor organization is composed of local labor organizations located throughout the State of Connecticut and that the defendant's officers and General Executive Committee members are elected at a convention of delegates representing the members in good standing of said local labor organizations, the parties hereby agree and stipulate that:
   (a) Every such affiliated local labor organization, with the exception of Locals 512, 518, 626, 979, 1010, 1012, 1251 and 1500, has already conducted an election of delegates. With regards to the delegate elec-

In their opposition to the intervention motion, both plaintiff and defendant have moved for entry of judgment pursuant to the stipulation.

■ In Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court held that § 403 of the Act, 29 U.S.C. § 483, made an action brought by the Secretary of Labor the "exclusive" post-election remedy for a violation of Title IV and prohibited union members from instituting a private action to set aside an allegedly illegal union election. In Trbovich v. United Mine Workers of America, 404 U.S. 528, 537, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), however, § 403 was held not to impose a bar to intervention by union members in a post-election suit brought by the Secretary if the applicants for intervention do not seek to assert additional grounds to set aside an election but merely wish to present evidence and to argue in support of the Secretary's complaint.

In their motion to intervene, the applicants here state that they wish to intervene in the present action "in order to assert the allegations of the complaint of plaintiff, the Secretary of Labor . . . which complaint is expressly adopted by applicants." Therefore, there is nothing on the face of their application which indicates that Title IV bars them from intervening in this post-election suit. 404 U.S. 528, 537, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

■ From the memoranda that the applicants and the Secretary have filed with respect to intervention, it appears that the applicants wish to intervene in order to be heard with respect to the fashioning of an appropriate remedy for any illegal election procedures used in the September 1972 election. The Secretary alleges that he has been advised that the applicants' only objection to the remedy in the proposed settlement is the provision postponing a new election until September 1974.[4] The Secretary states that he was aware of this objection prior to filing the stipulation, that he considered its merits, and that he concluded that an earlier election would be impractical and would "impose an unnecessary financial burden on the defendant, defendant's affiliated local labor organizations and the

tions already conducted, plaintiff reserves the right to conduct an investigation of each such election to determine if the elections were conducted in accordance with Title IV of the Act and the International Constitution. In the event plaintiff, after investigation, determines that a delegate election was not conducted in accordance with Title IV of the Act or the International Constitution, plaintiff shall so notify defendant and each affected local labor organization shall conduct a new delegate election with plaintiff providing each affected local labor organization technical assistance in the conduct of such new election.

(b) Locals 512, 518, 626, 979, 1010, 1012, 1251 and 1500 will conduct delegate elections in 1974. Defendant will provide plaintiff with adequate notice of the dates on which said elections will be held, and plaintiff will provide each local labor organization technical assistance in the conduct of such elections.

4. The entry of this Stipulation is not to be construed as an admission on the part of the defendant that any violations of the Act, as alleged by the plaintiff, may have occurred in the conduct of the election held on September 16, 1972.

5. This action will be maintained on the docket of the Court pending completion of the election, after which plaintiff shall certify to the Court the names of the persons elected and that such election was conducted in accordance with Title IV of the Act, and insofar as lawful and practicable, in accordance with the provisions of the International Constitution. Upon approval of such certification, the Court may enter an order declaring that such persons have been elected as shown by such certification, and dismissing the action without costs.

4. For purposes of opposing this motion to intervene, the defendant has adopted the position expressed by the Secretary in his memorandum of law filed with this Court on August 31, 1973.

Department of Labor." But the Secretary's rejection of the union members' views as to a proper remedy does not bar them from intervention. As the Supreme Court specifically observed in *Trbovich*: "Since the court is not limited . . . to consideration of remedies proposed by the Secretary, there is no reason to prevent the intervenors from assisting the court in fashioning a suitable remedial order." 404 U.S. at 537, n. 8, 92 S.Ct. at 636. The issue at this point is not whether the members' objection is well taken, only whether they are entitled to press it as parties to the litigation. Section 403 is no barrier to their doing so.

The requirements of Fed.R.Civ.P. 24(a)(2) must be applied in determining whether this application for intervention should be granted. See Trbovich v. United Mine Workers of America, *supra*; Hodgson v. Carpenters Resilient Flooring Local Union No. 2212, 457 F.2d 1364, 1368 (3d Cir. 1972). As amended effective July 1, 1966, Fed.R.Civ.P. 24(a)(2) provides in part:

> Upon timely application anyone shall be permitted to intervene . . . (2) when the applicant claims an interest relating to the . . . transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The applicants have made a sufficient showing of each of the necessary requirements. Their application is (1) timely; (2) shows an interest in the subject matter of the action; (3) shows that the protection of their interest may be impaired by the disposition of this action; and (4) shows that their interest is not adequately represented.

A.  *Timeliness of the Application.*

Although the parties have not explicitly challenged the timeliness of the appli-

cants' motion, the memorandum of law filed by the Secretary obliquely raises the issue by indicating that if this motion is granted, the parties' efforts to settle this dispute by negotiation rather than by a costly lawsuit may be thwarted by the intervenors, thereby working a hardship upon the original parties to this action. The applicants filed this motion to intervene on July 5, 1973, less than three months after the Secretary had filed his complaint. Although it appears that the parties had already begun negotiating to settle this controversy without lengthy litigation, they did not file their stipulation for judgment until fifteen days after the applicants had moved to intervene. Furthermore, the defendant has not filed its answer to the Secretary's complaint, pending this Court's decision on the proposed stipulation.

This case clearly does not present a situation in which an application for intervention was filed after the parties had joined issue on the merits and then had engaged in lengthy and productive negotiations toward settlement. It is possible that granting a motion for intervention in such a situation would prejudice and work a hardship on the original parties to that action.

■ In the present case, however, the parties did not join issue on the merits but instead immediately entered negotiations which resulted in a stipulation for settlement that was not filed, and apparently not finalized, for more than a week after the applicants sought to intervene. In these circumstances, the application is timely.

B.  *The Applicants' Interest in the Subject Matter of this Action.*

■ The parties to this suit do not contend that the interest of the applicants in having an illegal election of its officers and Executive Committee members declared invalid and a new election ordered is an insufficient interest in the subject matter of this action for pur-

poses of intervention under Rule 24(a)(2). The *Trbovich* decision has led others to conclude that an applicant for intervention who initially filed a complaint with the Secretary that led to a post-election suit has such a direct, substantial interest in the subject matter of that suit that his application meets the "interest" requirement for intervention as of right. Hodgson v. District No. 5, United Mine Workers of America, 55 F.R.D. 227 (W.D.Pa.1972); see 3B J. Moore, Federal Practice ¶ 24.09–1 [2], at 24–302 n. 7 (Supp. 1972).

### C. *Protection of the Applicants' Interest may be Impaired by the Disposition of this Post-Election Suit.*

■ The applicants must show that the disposition of this action will impair their ability to protect their interest "as a practical matter." C. Wright, Law of Federal Courts § 75 (1970). After a union member who wishes to challenge the legality of a union election has exhausted the internal remedies provided by the union constitution and bylaws, his only post-election remedy, state or federal, is a suit by the Secretary under § 402 of the Act. Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). If this Court should approve the proposed stipulation for settlement or, after rejecting the stipulation, should determine that the election conducted by the defendant on September 16, 1972, is invalid, the remedy developed to protect the union members' interest in a valid union election will be shaped entirely by this action. On the other hand, if this Court should reject the proposed stipulation for judgment and, after a hearing on the merits, should determine that the contested election did not violate Title IV of the Act, the applicants will be foreclosed from seeking any other state or federal remedy for the protection of their interest in a valid union election. Thus, as a practical matter, the applicants will be bound by any decision in this action regarding the validity of the challenged election and the suitability of any remedy that might be developed as a consequence of that decision.

The Secretary, in effect, urges that this test of Rule 24(a)(2) should be applied to the specific terms of the proposed remedy, rather than to the lawsuit as a whole. His point seems to be that intervention should be denied in the absence of any showing that the applicants' interest will be impaired by a September 1974 election. Such an approach would require an applicant for intervention to demonstrate that he will prevail before he is permitted to intervene. Whether an applicant's interest would be impaired by disposition of a lawsuit depends on the range of dispositions open to a court about which an applicant is entitled to be concerned, not the specific disposition the original parties are seeking to have a court approve. The applicant is entitled to have his standing in the suit determined before the appropriateness of a remedy is decided.

### D. *Adequacy of the Representation of the Applicants' Interests.*

■ In adopting a standard for determining the adequacy of the Secretary's representation under Fed.R.Civ.P. 24(a)(2), the Supreme Court noted in *Trbovich* that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." 404 U.S. at 538, n. 10, 92 S. Ct. at 636.

Here, the applicants want to urge that the proposed remedy is inappropriate, a position *Trbovich* explicitly entitles them to assert. The Secretary is urging precisely the opposite conclusion. Obviously, the Secretary is not adequately representing the applicants on the issue they wish to have this Court consider.

The Secretary is really arguing that his representation should be considered adequate because his proposed remedy is in fact appropriate. His memorandum emphasizes the benefits of a negotiated settlement. But as with his contention that the applicants have not shown that their interests may be impaired, the Secretary wants a decision on the merits to foreclose the applicants' opportunity to be heard. His contentions about the proposed remedy may be sound. But in urging them, he does not "adequately represent" those who wish to assert the opposite position.

With intervention allowed, the next issue concerns the future course of the litigation. The original parties are pressing for approval of the stipulation. Normally, it might seem anomalous to consider a stipulation for judgment when some of the parties (here, the intervening plaintiffs) are withholding their consent. But the intervenors are contesting only the appropriateness of the proposed remedy. If the remedy is deemed appropriate notwithstanding their objections, judgment can still enter upon it. The consent of the original parties will remain, and the intervenors will have had their day in court. On the other hand, if the intervenors prevail, then there is the risk that the defendant union will not consent to any remedy other than the one proposed, in which case litigation of the merits will ensue. That prospect may well be an equity to be weighed in considering intervenors' objections. The net effect is that a hearing with respect to remedy in this case will not be the normal situation where, after an adjudication on the merits, all parties are heard and the formulation of a remedy is ultimately for the court. Here, because two of the parties are in agreement and their agreement precedes litigation on the merits and is conditioned on not litigating the merits, the remedy hearing becomes an all-or-nothing consideration of the proposed remedy (subject, of course, to further

negotiations now that the union members have been permitted to intervene). The Court is not free to formulate a new remedy and impose it upon the union in the absence of an adjudication on the merits or a revised consent.

Accordingly, the motion to intervene is granted, and a hearing will be held on October 23, at which time the issue will be the appropriateness of the remedy proposed by the original parties.

