UNITED STATES of America, Plaintiff,
and

Trustees for Alaska and Alaska Center
for the Environment,
Plaintiff-Intervenors,

v.

KETCHIKAN PULP COMPANY,
Defendant.

Civ. No. A76–245.

United States District Court,
D. Alaska.

March 18, 1977.

See also, D.C., 74 F.R.D. 104.

G. Kent Edwards, U. S. Atty., Anchorage, Alaska, for Alaska.

John A. Hamill, Chief, Legal Support Branch, and William T. Christian, Seattle, Wash., for Environmental Protection Agency, Region X.

Wilson A. Rice, Anchorage, Alaska, Edward L. Strohbehn, Jr., National Resources Defense Council, Inc., Washington, D.C., for Intervenor Trustees of Alaska.

Theodore M. Pease, Jr., Anchorage, Alaska, Douglas E. Kliever, Daniel B. Silver, Washington, D.C., for defendant Ketchikan Pulp Co.

Murphy L. Clark, Anchorage, Alaska, for amicus curiae Ketchikan Gateway Borough.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiff's and defendant's request to enter a consent decree. This action and the present request represent the culmination of lengthy pre-suit negotiations and administrative hearings involving plaintiff and defendant. The underlying dispute in this case involves the effluent discharge requirements of the Federal Water Pollution Control Act, 33 U.S.C. § 1311 *et seq.* (hereinafter the Act of FWPCA).

On November 15, 1976, the government filed the complaint in this case alleging that defendants had failed to meet the effluent discharge requirements of the permit they were issued under the FWPCA. Simultaneously the parties filed the proposed consent decree which is the subject of the instant request. The decree presented a compromise plan to bring KPC into compliance with the Act. After a period of public comments on the decree the Trustees for Alaska and other concerned environmental groups moved to intervene in the action under 33 U.S.C. § 1365(b)(1)(B). Two of the

three groups were allowed to intervene[1] and a hearing on entry of the proposed decree was rescheduled to allow intervenors to prepare comments and objections to the proposed decree. Intervenors have now presented the court with several specific objections to the decree.

■ The first issue with which the court must deal is the apparently anomalous procedure of considering a consent decree when one of the parties to the action withholds its consent. Upon a request to the parties this issue was specifically addressed at oral argument. Counsel and the court have only discovered a minimal number of cases in which a consent decree was entered over the objection of a party and only one which specifically addressed the issue. In *Brennan v. Connecticut State UAW Community Action Program Council*, 60 F.R.D. 626, 632 (D.Conn.1973) the court in similar circumstances held that intervenors should be allowed to challenge the appropriateness of the remedy and if the remedy is deemed appropriate by the court judgment can still be entered. *See also Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vic.*, 384 F.Supp. 585 (S.D.N.Y.1974), aff'd 514 F.2d 767 (2 Cir.) cert. den. 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203; *U. S. v. Simmonds Precision Products, Inc.*, 319 F.Supp. 620 (S.D.N.Y.1970); Note: *Intervention in Government Enforcement Actions*, 89 Harv.L.Rev. 1174, 1199–1200 (1976). The court, and apparently intervenors themselves, agree with this statement of the law. As intervenors appropriately point out, the civil enforcement provisions of the FWPCA would otherwise be rendered impossible to administer. Those provisions allow any affected citizen to intervene in a government action as a matter of right. 33 U.S.C. § 1365(b)(1)(B); 33 U.S.C. § 1365(g). If such a citizen were allowed to block entry of a consent decree merely by objecting to its terms it would wreak havoc upon government enforcement actions. Accordingly the court holds that once interve-

nors have been given the opportunity to object to the decree they have had an appropriate day in court and a judgment on consent may be entered.[2]

*Standard of Review*

■ The next issue which must be considered is the proper standard of review which the court must adopt in determining whether to approve the proposed decree. The government and defendant assert that in reviewing the proposed decree the court should approve the decree unless it finds the agency guilty of bad faith or malfeasance. As a secondary position they assert that the decree should be viewed under the clearly erroneous, abuse of discretion, or violation of the law standard. The court does not agree with either of these proposed standards. With one exception the cases cited do not support the proposition which the parties assert. Several of the cases deal with a statutory scheme in which the agency itself issues some type of order. In those cases Congress has vested the agency with the power to issue orders because of the agencies perceived expertise. *See e. g. Moog Industries v. FTC*, 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958); *Butz v. Glover Livestock Comm.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973). That statutory power is not present in the FWPCA and the agency must come to the court under the circumstances present herein to obtain an enforceable judgment. Entry of such a judgment is a judicial act which deserves more than the court's rubber stamp on the agency's action. *Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944).

The court also finds inapplicable the rationale of *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). *Dunlop* involved the review of a decision by an agency not to bring suit when an interested party so desired. The statutory scheme in *Dunlop* is distinguishable in material respects which totally undercut its

---

1. One group was found to lack standing under *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

2. Precisely what the intervenors are entitled to receive on their day in court is discussed *infra*.

persuasiveness herein. If applicable as a proper standard under any circumstances in a FWPCA case, however, it would be in a suit brought to compel agency action under 33 U.S.C. § 1365(a)(2).

*United States v. Associated Milk Producers*, 394 F.Supp. 29 (W.D.Mo.1975) reiterates the standard of review of a proposed consent decree urged by the government and defendant in the course of ruling on a motion to intervene. *Id.* at 41. When actually discussing entry of the decree itself, however, the standard used appears to be whether the decree is in the public interest. *Id* at 44.

In *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) the Court referred to the bad faith and malfeasance standard. That passing reference was pure dicta, however, and unpersuasive in the context of the present litigation.

■ In the present case the court is asked to enter a judgment which clearly will have an affect upon the public. In apparent recognition of the fact that the government might not always strenuously protect the public's interest the FWPCA contains the provision allowing citizen's suits and citizen intervention in government civil actions. Once these citizens are allowed to intervene the court is certainly obligated to consider with due respect the objections raised. If the review of the agency's proposed decree were circumscribed by a very narrow standard of review, the right of citizen intervention would be a hollow right indeed. The court concludes that the appropriate standard is that the court should determine whether the decree adequately protects the public interest and is in accord with the dictates of Congress. *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vic.*, 384 F.Supp. 585, 587–88 (S.D.N.Y.1974), aff'd 514 F.2d 767 (2 Cir.), cert. den. 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203; *United States v. Ling-Temco-Vought, Inc.*, 315 F.Supp. 1301, 1309 (E.D.Pa.1970).

Having stated the standard to be applied the difficulty, of course, is in the method of its application. Intervenors request an evidentiary hearing at which time they would place the burden on those seeking to enter the decree to justify its terms. Some reliance for that proposition is placed on *Patterson, supra*, where the decree was presented after four weeks of trial. In *Patterson*, however, the court acknowledged that its position was somewhat unique, and additionally the necessity for factual findings arose due to that circuit's standards in Title VII cases. *Id.* at 588. *See also United States v. Ling-Temco-Vought, supra* (wherein the court explicitly placed some weight on assurances from the Department of Justice).

■ In the present case the government and defendant contend that a justification of the consent decree through an evidentiary hearing would be in effect a full trial of the case and the consent decree would not serve its purpose. The court agrees with that assessment. Although the court is obliged to protect the public interest it is not necessary to hear all of the evidence to perform that function. In this case extensive public hearings and comments on this decree were considered by the government. There was also an administrative hearing in a Section 507(e) proceeding. 33 U.S.C. § 1367(e). Those comments, and transcripts filed with the court by the parties and amicus curiae, have provided a sufficient foundation upon which the court can assess the public interest. In absence of some substantiated claim by intervenor or some apparent fault in the decree as illuminated by the public comments the court will not require a factual presentation to support every decision reached by the government.

*Specific Objections*

Intervenors object to several portions of the decree that will be dealt with seriatim. Their first objection is to the portion of the decree extending defendant's present permit from June 30, 1978 to December 15, 1979.

■ Intervenors do not contend that this particular provision is not in the public interest but rather that it is beyond the au-

thority of the parties to negotiate or the court to confirm in the context of this action. Their argument is that paragraph 4 of the decree which extends defendant's present permit was negotiated in the course of an enforcement proceeding under 33 U.S.C. § 1319 and was not properly adopted under the permit section, 33 U.S.C. § 1342. This contention is not well taken. The Administrator has the power to issue a permit under 33 U.S.C. § 1342 after public hearings. In the present case there were extensive public hearings regarding the consent decree which of necessity included the permit extension. Thus, following these hearings, the Administrator would have had the power to alter KPC's permit notwithstanding the enforcement proceeding. The fact that he chooses to include the extension in the decree entered herein is irrelevant as he has the authority independently of this decree to make the extension. The effect of including the extension in the decree is only to condition it upon the approval by the court of the settlement of this case.

■ The next objection raised by intervenors is that the decree unlawfully waives the necessary public hearing for defendant's subsequent permit. The decree provides that, ". . . EPA, consistent with its procedures for doing so, will issue a second permit containing the same effluent limitations . . . ." Intervenors contend that by committing itself at this time to the issuance of a second permit with certain standards that EPA has unlawfully denied the right to a public hearing on the second permit. As with the previous objection it is not contended that this alleged deficiency is not in the public interest. EPA points to the language "consistent with its procedures for doing so . . ." and asserts that this language envisions the prescribed public hearing. Assuming that by this provision the results of the Administrator's action following the public hearing are not preordained by the wording of this decree the court finds that the provision does not violate the Act.

This same rationale applies to the proposed terms of the second permit regarding in-plant modifications. Under this decree EPA may suggest certain standards but those standards cannot be guaranteed until there have been proper hearings on the second permit.

■ Intervenors' next objection is that the decree unlawfully grants immunity from future citizens suits for further violations of its permit. This contention is not well taken. While it is true that the decree precludes further suits for the specific violations alleged herein that does not confer immunity for other permit violations. As to the violations sued upon herein the proposed decree fully satisfies the liability of defendant. It does not, however, preclude citizens suits for different violations nor does it attempt to preclude citizens suits to force EPA to enforce the decree. 33 U.S.C. § 1365(a)(2).

■ Although one of the remaining objections is classified as a legal objection, the court perceives virtually all of the additional alleged deficiencies as objections to the reasonableness of the decree. These objections are that (1) the decree does not impose a fine for total suspended solid discharge; (2) that the 45 month compliance schedule is unreasonably long; (3) that the force majeure clause is unreasonably broad; and (4) that the fine is too low.

While it may well be true that each of these provisions extracted less than was possible from defendant it must be remembered that a consent decree by its very nature will contain some elements of compromise. The court has examined the records herein and it does not appear that the government was unusually lenient nor that the public interest has been subverted in any manner. It further appears that the mandate of the FWPCA will be met by these provisions. Accordingly, the "reasonableness" issues are not well taken.

The final objection raised is that the parties to this decree have not supplied sufficient data to support the decree. The evidentiary requirements for the entry of a decree have been dealt with, *supra*, and the court finds this objection without merit.

Accordingly IT IS ORDERED:

THAT the request for entry of the consent decree is granted and said decree is entered concurrently with the entry of this memorandum.