UNITED STATES of America, Plaintiff,

v.

McGRAW–EDISON COMPANY, Cooper Industries, Inc., Alcas Cutlery Corporation, Aluminum Company of America, W.R. Case & Sons Cutlery Company, and AVX Corporation, Defendants.

No. CIV–88–542C.

United States District Court, W.D. New York.

Aug. 8, 1989.

U.S. Dept. of Justice, Environmental Enforcement Section, Land & Natural Resources Div. (Jerry Schwartz, of counsel), Washington, D.C., for plaintiff.

Chadbourne & Park (Charles K. O'Neill, of counsel), New York City, for defendant W.R. Case & Sons Cutlery Co.

CURTIN, District Judge.

Pending for decision are the government's motion for entry of the partial consent decree and defendant W.R. Case & Sons Cutlery Co. [Case]'s motion for summary judgment as to its liability under the Comprehensive Environmental Response, Compensation, and Liability Act [CERCLA], 42 U.S.C. § 9601 *et seq.*

## BACKGROUND

In the early 1980s, it was discovered that the groundwater from three municipal wells that supply drinking water to the city of Olean, New York, along with several private wells in the area [the "Olean Well Field Site"], were contaminated with trichloroethylene [TCE], and other volatile organic compounds [VOCs]. After investigation, the Environmental Protection Agency [EPA] identified three Olean facilities as the source of the TCE contamination: namely, the McGraw–Edison Company [McGraw–Edison], the AVX Corporation [AVX], and the Alcas Cutlery Corporation [Alcas]. In April, 1985, defendant Case was notified by the EPA that it had been identified as a potentially responsible party [PRP] under CERCLA, due to its ownership of 49 percent of the common stock of Alcas. Pursuant to this notification, Case participated in initial settlement negotiations in July, 1985, between EPA and the named defendants, and at all times during the course of its participation maintained that it was not a PRP since it was only a minority shareholder in Alcas and as such never "owned" or "operated" the Alcas facility within the meaning of Section 107(a) of CERCLA. These negotiations were terminated in January, 1986, without an agreement being reached as to any remedial plan.

On February 7, 1986, the EPA issued a unilateral administrative order to all defendants requiring them to implement remedial measures at the Olean Well Field Site. *See* Item 1, Attachment 2. Case subsequently notified the EPA that it did not

intend to comply with the order, based on what it termed its "limited ownership interest in Alcas." Item 37, p. 5.

On August 20, 1986, EPA sent a demand letter to defendants seeking reimbursement for past costs with respect to the remedial activities already conducted at the site. In September, 1986, settlement negotiations were commenced concerning the EPA's cost recovery claim, and at a meeting held September 18, 1986, counsel for Case reiterated his client's position that, as a minority shareholder in Alcas with no control over the company's operations, it was unwilling to contribute toward the reimbursement of EPA's past costs. As a result of this refusal to settle, the other participants in the negotiations requested that counsel for Case leave the meeting. After more than a year and a half of negotiations, a settlement was reached between EPA and defendants McGraw–Edison, Cooper Industries, Inc. [Cooper] (the parent corporation of McGraw–Edison), the Aluminum Company of America [Alcoa], AVX, and Alcas [hereinafter, the "settling defendants"].

The government filed this action on May 23, 1988, seeking to recover $2,077,950.00 from all defendants as costs incurred by the EPA in response to the contamination at the site, and seeking penalties from Case for refusal to comply with the administrative order. The complaint alleges that Case, as a 49 percent shareholder in Alcas during the period in which the alleged contamination took place, together with Alcoa (as 51 percent shareholder), "controlled, managed or supervised the operations of Alcas" so as to render it jointly and severally liable for response costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Item 1, ¶¶ 10, 35. On August 15, 1988, the government lodged a "Partial Consent Decree" with the court, which incorporates the agreement reached between EPA and the settling defendants. Under the decree, the settling defendants are required to pay the government $1,029,696.50 for past response costs, approximately half of the total alleged in the complaint. By order dated March 29, 1989, this court denied Case's motion for further discovery prior to the entry of the decree. Item 35.

DISCUSSION

1) *Summary Judgment*

■ In support of its motion for summary judgment, Case contends that there is no basis for subjecting it to CERCLA liability since at all relevant times it was only a minority (49 percent) shareholder in Alcas, and was never an owner or operator of the Alcas facility. Item 37, pp. 15–19. According to Case, there is no authority, either in the language or legislative history of CERCLA or in its interpretive caselaw, for imposing direct liability on a minority shareholder of a corporation. *Id.*, p. 18. Thus, Case argues, the only way it could be held liable under CERCLA is by "piercing the corporate veil," and the government has not met its burden on the instant summary judgment motion under any of the applicable legal standards for disregarding the corporate structure for the purposes of CERCLA liability. *Id.*, pp. 19–34. Finally, Case contends that it cannot be held liable for penalties under § 106(b) of CERCLA since its failure to comply with the administrative order is based on a good faith belief that it is not a responsible party under § 107(a). *Id.*, pp. 34–37.

In response, the government contends that the cases are clear as to the direct liability of a shareholder who participates in the management of a corporation found to be responsible for response costs under CERCLA. Item 41, pp. 3–9. The government also contends that Case may also be liable under the federal rule of decision for piercing the corporate veil. *Id.*, pp. 9–11. According to the government, the circumstances of Case's involvement in Alcas, which might support either a direct or derivative CERCLA liability theory, are disputed factual issues as to which additional discovery is necessary in order to frame a complete response to the instant summary judgment motion. *Id.*, pp. 11–20.

CERCLA imposes liability for response costs on four classes of persons,[1] including

---

1. "'[P]erson' means an individual, firm, corpo-   ration, association, partnership, consortium,

"any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). An "owner or operator" is defined as "any person owning or operating such facility.... Such term does not include a person, who, without participating in the management of a ... facility, holds indicia of ownership primarily to protect his security interest in the ... facility." 42 U.S.C. § 9601(20)(A).

Case argues that, as a mere minority shareholder in Alcas at the time of the alleged disposal of contaminants, it cannot as a matter of law be found to have been an "owner or operator" of the Alcas facility so as to bring it within CERCLA's mandate. The government contends, however, that Case may have exercised a sufficient degree of control over Alcas' operations to allow the court to find Case responsible under § 9607(a)(2). Specifically, the government points to the original agreement between Case and Alcoa establishing the Alcas Corporation and requiring Case to provide the technical expertise to supervise Alcas' manufacturing processes (*see* Exh. F, attached to Item 36), and Alcas' answers to interrogatories concerning the dual role of such persons as John O'Kain, who served as a corporate officer of both Case and Alcas during the time the alleged disposal of contaminants by Alcas took place. Exh. D, attached to *id.* According to the government, this and other evidence on file creates genuinely disputed issues of material fact as to Case's actual participation in the day-to-day operations of Alcas, and such evidence should not be disregarded as a possible basis for CERCLA liability merely because of the percentage of shares owned.

joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

Case argues that it cannot be held liable under CERCLA's express terms since this definition does not include a "shareholder" of a corporation. *See* Item 37, pp. 16–17. However,

[b]oth individuals and corporations are included within the definition of "person" under

The government relies on *United States v. Northeastern Pharmaceutical and Chemical Co., Inc.,* 579 F.Supp. 823 (W.D. Mo.1984), *aff'd in relevant part,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) [*NEPACCO*]. According to that case, CERCLA

literally reads that a person who owns interest in a facility and is actively participating in its management can be held liable for the disposal of hazardous waste.... CERCLA ... was designed to insure, so far as possible, that the parties responsible for the creation of hazardous waste sites be liable for the response costs in cleaning them up.

579 F.Supp. at 848. The district court in *NEPACCO* found that individual defendant John W. Lee, as both major stockholder of NEPACCO and vice president in charge of one of NEPACCO's plants, was an "owner or operator" of the plant and thus was a person liable under § 9607(a)(1). *Id.* at 848–49. Further, in *United States v. Nicolet, Inc.,* 712 F.Supp. 1193 (E.D.Pa.1989), the court held that "if an individual stockholder can be liable under CERCLA for his corporation's disposal, a corporation which holds stock in another corporation (e.g., a subsidiary) and actively participates in its management can be held liable for cleanup costs incurred as a result of that corporation's disposal." *Id.,* at 1203.

It is thus apparent from my review of the record that the government has raised several issues of material fact as to the actual extent of Case's involvement in the management and operations of Alcas at the time of the alleged disposal of hazardous materials, notwithstanding Case's assertions to the contrary that neither Mr. O'Kain nor anyone at Case knew anything about Alcas' waste disposal procedures.

Section 101(21) of CERCLA. Accordingly, if an individual stockholder can be liable under CERCLA for his corporation's disposal, a corporation which holds stock in another corporation (e.g., a subsidiary) and actively participates in its management can be held liable for cleanup costs incurred as a result of that corporation's disposal.

*United States of America v. Nicolet, Inc.,* 712 F.Supp. 1193, 1203 (E.D.Pa.1989).

These are genuinely disputed issues which are sufficient to preclude the entry of summary judgment in Case's favor at this juncture, and as to which further discovery may prove dispositive. Accordingly, a ruling on Case's motion for summary judgment is deferred, and that motion is continued pursuant to Fed.R.Civ.P. 56(f) to permit appropriate discovery to be had as to the actual extent of Case's involvement in the operations of Alcas.

### 2) Entry of the Partial Consent Decree

■ In support of its motion for entry of the decree, the government contends that the decree is fair, adequate, reasonable, protective of the public interest, and consistent with constitutional and congressional mandates. Item 44, p. 4. According to the government, Case's argument that the decree is unreasonable since it provides for recovery from the settling defendants of only about one-half of the total amount demanded in the complaint is untenable, especially in light of the law of the case as set forth in this court's March 29, 1989, order (Item 35). There, the court found the record to adequately demonstrate that, by the time the remedial activity at the site is complete, the settling defendants will have spent over $5,000,000.00, or approximately 83 percent of the total of over $6,000,000.00 in past response costs and the cost of current and future response actions. According to the government, the resultant potential recovery shortfall of 17 percent does not constitute a violation of the public interest so as to preclude the court from entering the decree, and Case's choice to forego negotiations in favor of absolute determination of its liability through expensive and risky litigation should not be allowed to endanger the sound and expeditious remedial and reimbursement program hammered out among the settling parties. Item 44, pp. 5-13.

In response, Case contends that the government's argument concerning the amounts that are being or will be spent on the remedial plan takes into consideration matters that are outside the scope of the decree and as such should be disregarded by the court. Item 45, pp. 11-12. According to Case, the complaint seeks $2.1 million, the decree provides for reimbursement of $1.029 million, and the $4.141 million referred to by the government is neither part of the litigation nor the decree, but was or will be spent under compulsion of the administrative order. Thus, notwithstanding this court's prior order, Case argues that the decree provides for recovery of only one-half of the response costs incurred, and that it is therefore unfair (id., pp. 11-16), unreasonable (id., pp. 16-17), not in the public interest (id., pp. 18-19), not signed in good faith (id., pp. 19-20), and violative of the EPA's hazardous waste enforcement policy (id., pp. 20-24).

The scope of the court's review of a proposed consent decree is not unlimited. The court's function "is not to substitute its own judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chemical & Plastics Corp.*, 540 F.Supp. 1067, 1072 (W.D.N.Y.1982) (Hyde Park Landfill).

> Among the factors to be considered by the reviewing court are the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved. In a case of this sort, where significant public interests are at stake, the court must also "determine whether the decree adequately protects the public interest and is in accord with the dictates of Congress." Accordingly, the court's function is to determine whether the proposed judgment adequately and fairly addresses the problems which Congress meant to correct when it enacted the statutes upon which this lawsuit is based.

*United States v. Hooker Chemical & Plastics Corp.*, 607 F.Supp. 1052, 1057 (W.D.N.Y.1985) (S–Area Landfill) (quoting *United States v. Ketchikan Pulp Co.*, 430 F.Supp. 83, 86 (D.Alaska 1977)) (additional citation omitted).

My review of the partial consent decree sought to be entered in the instant case indicates that it complies with these standards and adequately and fairly addresses the concerns of Congress in enacting CERCLA that serious environmental problems be dealt with quickly and reasonably. The decree provides, *inter alia*, that the settling defendants will reimburse the government for $1,029,696.50 in past response costs at the site (Proposed Decree, p. 5, Part V, ¶ A). Case argues that this proposal is unreasonable since it leaves Case liable for the remainder of the amount of response costs claimed in the complaint—*i.e.*, approximately $1,000,-000.00. Further, Case argues that the liability of the settling defendants for future costs to be incurred at the site is neither part of the decree nor part of this litigation, and thus should not be considered by the court. However, this court has already determined, in its prior order dated March 29, 1989, that,

> in addition to the $1,029,695[sic–6].50 to be reimbursed pursuant to the decree, the settling defendants have spent or will spend approximately $4.141 million in implementing the cleanup remedy for the site. Those defendants will therefore directly pay, or reimburse the government for, approximately $5,170,696.50—or approximately 83%—of the total clean-up and response costs of approximately $6,218,950.00.

Item 35, p. 5 (citing Affidavit of Nicoletta Di Forte, ¶¶ 17–19, attached as Exh. B to Item 22). This determination is further supported by a fair reading of the proposed decree, which provides that remedial work under the administrative order is continuing (*see* Proposed Decree, ¶ A(2)), and reserves the right of the government to bring claims for any response costs incurred in the future "whether or not associated with or resulting from a response activity for which the Plaintiff is reimbursed under this Decree" (*id.*, Part VIII, ¶ A(1)). Thus, the decree will provide, either directly or by reference to the administrative order, for a recovery of approximately 83 percent of the total amount eventually spent on the clean-up of the site. This is certainly a reasonable percentage to be arrived at by settlement, without the need for protracted and expensive litigation, and is in line with the spirit and intent of CERCLA to provide an effective and expeditious reimbursement and remedial program in accordance with the goal of protecting the public interest.

Accordingly, the government's motion to enter the partial consent decree is granted. Ruling on Case's summary judgment motion is deferred, and that motion is continued until further discovery can be had regarding the extent of Case's involvement in the operations of Alcas.

Counsel for the United States and for Case shall confer about a proposed discovery order and agree upon an order, if possible, for submission to the court by August 31, 1989. If they cannot agree, each shall send to the court a proposed order by that date.

A telephone conference will be held with counsel on Tuesday, September 12, 1989 at 4 p.m. Buffalo counsel shall attend in chambers.

So ordered.