**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**GEORGIA-PACIFIC CORPORATION,**
Defendant.

Civil Action No. 1:96–CV–1818–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 23, 1996.

Daniel Caldwell, III, Office of U.S. Attorney, Atlanta, GA, Jon A. Mueller & Dianne Shawley, U.S. Department of Justice, Land and Natural Resource Division, Washington, DC, Lois S. Schiffer & Robert H. Oakley, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, for Plaintiff.

David T. Buente & Kathryn B. Thomson, Sidley & Austin, Washington, DC, Gordon, Richard Alphonso, Georgia–Pacific Corp., Atlanta, GA, for Defendant.

*ORDER*

HULL, District Judge.

I. *Introduction.*—

Plaintiff, United States, on behalf of the Environmental Protection Agency ("EPA"), and defendant, Georgia–Pacific Corporation ("G–P") have come before this Court requesting approval of their proposed settlement in this Clean Air Act ("the Act") enforcement action. The United States filed its Complaint on July 18, 1996, alleging that G–P violated the Act's Prevention of Significant Deterioration ("PSD") major source permitting and pollution control requirements and State Implementation Plan ("SIP") minor source permitting requirements by failing to obtain appropriate permits and install appropriate pollution control devices at 18 wood products facilities nationwide. At the same time, the United States lodged the proposed Consent Decree with the Court, which em-

bodies the parties' comprehensive settlement of the government's claims. Under the terms of the Decree, Georgia–Pacific has agreed to install advanced pollution control devices on 11 wood products facilities, obtain appropriate PSD major source or SIP minor source . permits for. 18 facilities, and undertake environmental audits at 30 facilities, pay a civil penalty of $6 million, and undertake beneficial Supplemental Environmental Projects totalling $4.25 million. On November 14 and 22, 1996, the United States and G–P filed their respective motions in support of entry of the Decree.

■ While the Court recognizes the benefits of an early settlement, in particular the environmental benefits that will accrue from G–P's immediate implementation of the injunctive measures contained in the Decree, the Court should approve of the settlement if it determines that the settlement is fair and reasonable, and resolves the controversy in a manner consistent with the public interest. *Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *see also United States v. Oregon,* 913 F.2d 576, 580 (9th Cir.1990) (before approving consent decree, district court must be satisfied that decree is fundamentally fair, adequate and reasonable, and in conformity with applicable laws), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991).

■ As discussed below, the proposed Decree meets the three-part test for district court approval of the settlement. The Decree is fair in that it is the product of good-faith negotiations, reflects the opinions of experienced counsel, and takes into account the possible risks involved in litigation if the settlement is not approved. *United States v. Hooker Chem. & Plastics Corp.,* 607 F.Supp. 1052, 1057 (W.D.N.Y.), *aff'd,* 776 F.2d 410 (2d Cir.1985). The Decree also reflects the parties' careful and informed assessment of the relative merits of each other's claims while taking into consideration the costs and risks associated with litigating a massive case such as this. Of course, it also embodies a measure of compromise on both. sides, as with any fair settlement.

The Decree is reasonable in that it is technically adequate and adequately compensates the public for the alleged violations. *United States v. Telluride Company,* 849 F.Supp. 1400, 1403 (D.Colo.1994). The Decree contains specific relief such as the installation of advanced pollution controls and air permitting that fully addresses the compliance deficiencies alleged in the United States's Complaint. It obtains this compliance in a far shorter time than if the parties had litigated the action, and requires payment of a civil penalty that is appropriate in light of the violations. alleged. Under the Decree, G–P will also undertake Supplemental Environmental Projects, in addition to the injunctive relief and civil penalty, that will improve the air quality in the regional area impacted by the alleged violations. This Consent Decree furthers the statutory goals of the Act by protecting and enhancing the quality of the Nation's air and thus serves the public interest. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

■ The role of the Court in reviewing an environmental settlement is to determine "whether the Decree comports with the goals of Congress." *Sierra Club v. Coca–Cola Corp.,* 673 F.Supp. 1555, 1556 (M.D.Fla.1987). EPA estimates that, when the control equipment required by this Decree is installed, over 5,500 tons of Volatile Organic Compounds ("VOCs") will cease to be emitted into the atmosphere every year. The Decree protects and improves the environment by requiring G–P to expeditiously control its emissions, to obtain Clean Air Act permits for its facilities, and to conduct comprehensive audits. The Supplemental Environmental Projects that G–P will undertake pursuant to the Decree will also serve to improve the·Nation's air quality.

■ The final step in the Court's inquiry is the evaluation of public comments on the Consent Decree. In this process, the function of a reviewing Court is not to substitute its judgment for that of the parties to the decree, but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy. *United States v. Hooker Chemicals and*

*Plastics Corporation,* 540 F.Supp. 1067, 1072 (W.D.N.Y.1982), *aff'd,* 749 F.2d 968 (2d Cir. 1984).

In this case, the public was given notice of the proposed Consent Decree and provided with an opportunity to comment on its terms. Two of G–P's competitors in the wood products industry, Louisiana–Pacific Corporation ("L–P") and Potlatch Corporation ("Potlatch"), two state agencies: the Alabama Department of Environmental Management and the South Carolina Department of Health and Environmental Control, and one community that is in proximity to a G–P facility, the Town of Bay Springs, Mississippi, submitted comments on the Decree.

Two of G–P's competitors oppose certain provisions of the settlement. L–P contends that the G–P Decree is not "fair and uniform" when compared to the requirements of the settlement to which L–P agreed in the context of its 1993 Clean Air Act enforcement action. While L–P's comments focus on a number of technical provisions of the G–P Decree, the underlying basis for all of L–P's comments is its contention that the G–P settlement in not "comparable" to each and every provision of the L–P Decree. L–P questions specific differences in the two settlements, including the destruction standards for some pollutants, the Decree's monitoring and control requirements, and the particular facilities subject to the enforcement action.

The Court finds, however, that the differences in the settlements are reasonably attributable to the facts that gave rise to the alleged violations, distinctions in the types of manufacturing processes and pollutants at issue at the plants covered by the respective settlements, and certain elements of compromise, which are the "very nature" of a consent decree. See *United States v. Ketchikan Pulp Co.,* 430 F.Supp. 83, 87 (D.Alaska 1977). The L–P Decree is not before this Court for review, nor can fairness of the G–P Decree be determined by a line-by-line comparison with any other Clean Air Act settlement when the underlying facts and the specific terms of any two settlements are unique.

Potlatch, another competitor of G–P's, also questions the fairness of the Decree's requirement that G–P install advanced pollu-

tion control equipment and apply for new Clean Air Act permits for many of its plants, arguing that plants constructed or modified in the past should not be subject to current Clean Air Act permitting requirements. This raises an issue that would have been litigated in this matter in the absence of this settlement. The United States would have asserted that the law requires that any action to rectify a continuing violation must be undertaken according to the legal standards in existence at the time that the violations are rectified. As part of this settlement, G–P, without conceding the validity of the United States' assertion, has agreed to install new pollution control equipment and apply for new Clean Air Act permits pursuant to current Clean Air Act requirements, even though most of the alleged violations began many years in the past. The settlement is a fair and reasonable compromise considering all factors, including the public interest.

In addition, the United States received comments from two states and one local government on the G–P Decree. The states, Alabama and South Carolina, raised several questions about the settlement, sought clarification of certain provisions, and made a few requests of EPA which were easily addressed in the United States' motion, but they are not opposed to the entry of the Decree. The local government, the Town of Bay Springs, Mississippi, expressed concerns about the potential loss of jobs as a result of the enforcement action. Bay Springs' interest in balancing the need for jobs with an interest in protecting the environment is one shared by thousands of communities across the country. National enforcement actions, such this action against G–P, protect against the development of "safe havens for polluters." When the environmental laws are enforced fairly and even-handedly from state-to-state, communities such as Bay Springs avoid having to choose between a clean environment for its children and jobs for its citizens.

II. *Summary.—*

The Consent Decree presented to this Court for entry is a fair and just resolution to a complex Clean Air Act enforcement ac-

tion. The Decree provides for comprehensive remedial action that is protective of public health and the environment. The settlement requires G–P to pay a civil penalty that is reasonable in light of the violations alleged in the United States' Complaint, and to perform Supplemental Environmental Projects that benefit the regional areas where the G–P facilities are located. While the comments provided were thoughtful and raise interesting issues, none of the commenters have provided a basis for rejection of the Decree. Entry of the Decree is supported by a long line of caselaw which requires deference to a federal agency's discretion in effecting a settlement in an area of complex legal and factual issues, and to the sophistication of the parties who negotiated in good faith to achieve an expeditious resolution of the United States' claims.

The Court having considered the motions of the parties in this action in support of Entry of the Consent Decree lodged with the Court on July 18, 1996, and good cause having been shown,

IT IS HEREBY ORDERED that the Consent Decree is hereby ENTERED.