769 F.2d 207
 23 ERC 1150, 16 Envtl. L. Rep. 20,056
 CHESAPEAKE BAY FOUNDATION and Natural Resources Defense
Council, Inc., Appellants,
v.
AMERICAN RECOVERY COMPANY, INC., Appellee.
In re CHESAPEAKE BAY FOUNDATION, INC., and Natural Resources
Defense Council, Inc., Appellants.
UNITED STATES of America, Plaintiff,
v.
AMERICAN RECOVERY COMPANY, INC., Appellee.
 Nos. 85-1218, 85-1320.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 16, 1985.
Decided Aug. 5, 1985.
 
 James Thornton, New York City (Ross Sandler, New York City, Scott Burns on brief) for appellants.
 Warren K. Rich, Baltimore, Md. (Lester O. Brown, Niles, Barton & Wilmer, Baltimore, Md., on brief) for appellee.
 Before WINTER, Chief Judge, and RUSSELL and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs Chesapeake Bay Foundation (CBF) and Natural Resources Defense Council, Inc. (NRDC) gave notice on October 20, 1983 to defendant, the State of Maryland, and the EPA, of their intent to sue defendant for violations of its effluent discharge permits under the Clean Water Act. Plaintiffs were prepared to file suit at the end of the sixty-day waiting period required by 33 U.S.C. Sec. 1365(b)(1)(A), but they agreed to cooperate with the government and to wait until the government was prepared to go forward with its own enforcement action. By prior arrangement, plaintiffs filed suit first, on January 23, 1984 at 12:34 p.m., and the government then filed its own action, later that day at 3:52 p.m. Defendant responded to plaintiffs' suit with a motion to dismiss, on the ground that it was duplicative of the government suit. Plaintiffs answered this with a motion for consolidation, which the government supported. The district court denied the motion for consolidation and granted the motion to dismiss. Plaintiffs then moved to intervene as of right in the government suit pursuant to 33 U.S.C. Sec. 1365(b)(1)(B), and the district court denied that motion also. Plaintiffs appeal both the denial of their motion to intervene and dismissal of their independent action.
 
 
 2
 The district court gave no explanations for its rulings and thus we cannot be sure of their basis.
 
 
 3
 The only arguments that defendant advances in support of the district court's results are that plaintiffs lacked standing and that their independent action is barred by the government's parallel suit. We find neither argument persuasive.
 
 
 4
 The sixty-day waiting period of Sec. 1365(b)(1)(A) gives the government the opportunity to act and to control the course of the litigation if it acts within that time period. If the government delays, then the citizens may go forward with their own suit, unless before they file "the Administrator or State has commenced and is diligently prosecuting" its own enforcement action. Sec. 1365(b)(1)(B). This latter statutory bar is an exception to the jurisdiction granted in subsection (a) of Sec. 1365, and jurisdiction is normally determined as of the time of the filing of a complaint. Moreover, the verb tenses used in subsection (b)(1)(B) and the scheme of the statute demonstrate that the bar was not intended to apply unless the government files suit first (and is diligently prosecuting such suit). In this case, the government did not act within the sixty-day waiting period and it had not yet filed suit when plaintiffs filed their independent action. Therefore, plaintiffs' suit was not barred, and if this was the basis for the district court's dismissal, that decision was incorrect. See Brewer v. City of Bristol, 577 F.Supp. 519, 527-28 (E.D.Tenn.1983) (spirit of Act not satisfied and citizen suit not barred by later filed state enforcement action). The district court has available means, including consolidation, citizen intervention (Sec. 1365(b)(1)(B)), and intervention by the Administrator (Sec. 1365(c)(2)), to manage its docket and to protect defendants from duplicative litigation, but dismissal of a previously filed citizen suit is not an appropriate remedy.
 
 
 5
 We are also unpersuaded by defendant's argument that plaintiffs lacked sufficient standing to bring an independent action or to intervene in the government's suit. We may accept for purposes of this decision defendant's argument that Congress defined the term "citizen" in Sec. 1365(g) to incorporate the standing requirements outlined in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), but that argument does not defeat plaintiffs' standing. The standing defect in Morton was that the "impact of the proposed changes ... will not fall indiscriminately upon every citizen" and that the Sierra Club "failed to allege that it or its members would be affected in any of their activities or pastimes by the ... development." 405 U.S. at 735, 92 S.Ct. at 1366. In contrast, plaintiffs here did allege that their members resided in the vicinity of the affected waters and that those members "recreate in, on or near, or otherwise use and enjoy" those waters. Plaintiffs' allegations also certainly meet the requirements of Sec. 1365(g), because they alleged that their members' "health, recreational, aesthetic and environmental interests ... have been, are being and will be adversely affected by" the defendant's illegal pollution discharges. We think these allegations* satisfy both the constitutional requirements of standing and the requirement that plaintiffs be "citizens" as defined in Sec. 1365(g). The Second Circuit's opinion in Sierra Club v. SCM Corp., 747 F.2d 99 (2 Cir.1984), is distinguishable on the basis of the Sierra Club's argument to which the court was responding. The language of the Second Circuit does not, we think, extend to this case.
 
 
 6
 Having concluded that plaintiffs have standing and that their action was not barred by the parallel government suit, we see no basis on which to support the district court's orders when made. Both the right to file an independent action and the right to intervene in a government enforcement suit are express statutory rights that were denied in this case. Nevertheless, events have changed since the district court's orders, and we believe this appeal is now effectively moot. The government and defendant have negotiated a consent decree which is awaiting final signatures and which plaintiffs concede is a "good" settlement to which they have no objections. Defendant has ceased or will shortly cease the operations at issue here and will abandon its relevant discharge permits, so the only immediate aspect to enforcing the decree will be collection of a monetary penalty. Plaintiffs conceded that if they were allowed to intervene in the government suit their appeal from dismissal of their independent action would be moot, and since we believe that subsequent events in the government's case have effectively mooted that issue also, we dismiss both appeals as moot.
 
 
 7
 DISMISSED.
 
 
 
 *
 Since plaintiffs' complaint and motion to intervene were dismissed at preliminary stages without evidentiary testing, we must accept plaintiffs' allegations as true. CBF also alleged that it has over 14,000 members in the Chesapeake Bay Area, and NRDC alleged that it has over 1,270 individual members in the State of Maryland. We have no reason to doubt the veracity of any of these allegations, but if they had been challenged, the district court could have required an affidavit to the same effect or disclosure of the names of a representative number of members. We reject any implication in defendant's argument on standing that individual citizen members of organizational representatives must subject themselves to detailed interrogatories on their use of the affected waters or the implication that, if the members exist as alleged, the organization may not sue on their behalf