**SIERRA CLUB, Plaintiff,**

v.

**The COCA–COLA CORPORATION, Defendant.**

**Civ. A. Nos. 84–827–Civ–T–15, 84–1021–Civ–T–15.**

United States District Court, M.D. Florida, Tampa Division.

Sept. 24, 1987.

Bill Wagner, Tampa, Fla., for plaintiff.

Gary Takacs, Asst. U.S. Atty., Tampa, Fla., F. Henry Habicht, II, Asst. Atty. Gen., Quentin C. Pair, Dept. of Justice, Land & Nat. Resources Div., Washington, D.C., M. Gretchen Muench, U.S. E.P.A., Atlanta, Ga., for U.S.

Michael D. Martin, Martin & Martin, Lakeland, Fla., Charles H. Tisdale, Jr., King and Spalding, Atlanta, Ga., for defendant.

## ORDER

CASTAGNA, District Judge.

On June 20, 1984, after providing the requisite statutory notice to the Administrator of the Environmental Protection Agency (EPA), the plaintiff Sierra Club brought this lawsuit charging the Coca Cola corporation with discharging excess quantities of pollutant into a small stream, the Lake Lexa Run, from its citrus processing plant in Auburndale, Florida. On July 30, 1984, the EPA filed an action against Coca Cola charging essentially the same violations of section 505 of the Clean Water Act [33 U.S.C. § 1365]. These cases were thereafter consolidated on motion of the Sierra Club. Coca Cola and the government have agreed to a settlement of their dispute; the Sierra Club objects to this settlement. Before the Court are the consent decree proposed by Coca Cola and the government, the various memoranda relating to that consent decree, and Coca Cola's motion for summary judgment.

The proposed consent decree (attached to this order as appendix A) requires Coca Cola to comply with effluent limitations provided in its existing permit. The consent decree further requires Coca Cola to make improvements at its Auburndale plant to eliminate some wastewater discharge. To ensure that these requirements are met, Coca Cola must file progress reports with the EPA, and the EPA retains the right to conduct periodic inspections. If Coca Cola violates the provisions, it must pay a stipulated penalty, unless the violation was due to events beyond Coca Cola's control. Finally, the proposed decree requires Coca Cola to pay a $50,000 civil penalty for past violations.

■ Parties to a lawsuit may always compromise their dispute. *See United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). But where the parties wish to incorporate their settlement into a judicial decree—where they seek the imprimatur of judicial approval—the court must give the agreement more careful scrutiny. *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir.1981). The court must assure itself that the proposed consent decree is fair, reasonable, and equitable, *United States v. City of Alexandria*, 614 F.2d 1358, 1361 (5th Cir.1980), and that the decree does not violate the law or public policy, *United States v. Hooker Chemical and Plastics Corp.*, 540 F.Supp. 1067, 1068 (W.D.N.Y.1982). Where the lawsuit seeks to enforce a statute, the most important factor as to public policy is whether the decree comports with the goals of Congress. *See United States v. City of Miami*, 664 F.2d at 441.

■ In this case, the Sierra Club argues that the proposed consent decree falls short of these standards. The Sierra Club does not attack the proposed improvements to be made at the Auburndale plant; nor has it come forward with any evidence that the plant is now discharging unlawful quantities of pollutants. The Sierra Club does contend that the proposed civil penalty is too small. Upon a review of the record, the Court agrees that the civil penalty could have been larger, perhaps much larger. But the Court is unable to conclude that the $50,000 fine will denigrate the seriousness of Coca Cola's past violations, encourage future violations, or in any other way disserve the goals of the Clean Water Act. Accordingly, the proposed consent decree shall be entered.

■ The parties have raised, and at the Court's urging briefed, the issue of the effect entry of the consent decree should have on the Sierra Club's lawsuit. The government and Coca Cola urge that entry of the consent decree requires that the Sierra Club's action be dismissed. In support of this proposition they cite *United States v. Hooker Chemical and Plastics Corp.*, 540 F.Supp. 1067 (W.D.N.Y.1982), and *United States v. Ketchikan Pulp Co.*, 430 F.Supp. 83 (D.Alaska 1977). These cases, however, concerned the status of *intervenors* after entry of a consent judgment, and as such are inapposite. A more appropriate standard was supplied by the former Fifth Circuit sitting en banc in *United States v. City of Miami*, 664 F.2d 435 (5th Cir.1981).* That court, although badly fractured along other issues, adopted, per curium, the concurring opinion of Judge Rubin on the issue of a consent decree settling a dispute between less than all the parties. In that opinion, Judge Rubin recognized the right of parties to settle their dispute even though other parties did not agree. 664 F.2d at 440. But he further recognized that a consent decree cannot affect the rights of a non-consenting litigant. 664 F.2d at 442. Fealty to this principle precludes dismissal of the

Sierra Club's suit. The statutory history relied upon by the government demonstrates that a suit by the EPA Administrator was designed to be the primary enforcement mechanism for the Clean Water Act, but cannot alter this result.

■ Since the Sierra Club's lawsuit survives the entry of the consent decree, the Court must turn to the merits of Coca Cola's motion for summary judgment. The issue presented is whether a citizen's suit may be maintained under 33 U.S.C. § 1365(a) solely for past violations of the Clean Water Act. To this Court's knowledge, three of the circuit courts of appeal have considered this issue. The First and Fifth Circuits have determined that citizen's suits can be brought only for current violations of the Clean Water Act. *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169 (5th Cir.1987); *Pawtuxet Marina, Inc. v. Ciba–Geigy Corp.*, 807 F.2d 1089 (1st Cir.1986); *Hamber v. Diamond Shamrock Chemical Co.*, 756 F.2d 392 (5th Cir.1985). The Fourth Circuit disagrees, and allows citizen suits based solely on past violations. *Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 791 F.2d 304 (4th Cir.1986), cert. granted, —— U.S. ——, 107 S.Ct. 872, 93 L.Ed.2d 827 (1987). Since the Supreme Court has granted certiorari to consider the issue presented here and since nothing in the record suggests that the public interest or the interests of the parties requires immediate disposition of this case, the Court finds that the most prudent course to follow is to stay this action pending the Supreme Court's decision in *Gwaltney*.

Based on the foregoing, it is

ORDERED:

1. The motion for entry of the consent decree is granted, and the proposed consent decree is ratified and entered as the judgment of the Court.

2. This case is stayed pending the decision of the United States Supreme Court in *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*

---

* Decisions of the former Fifth Circuit are, of course, binding precedent on this Court under *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

APPENDIX A

United States District Court

Middle District of Florida

Tampa Division

Sierra Club, Plaintiff,

v.

The Coca–Cola Corporation, Defendant.

Civil Action No. 84–827, Civ–T–15

United States of America, Plaintiff,

v.

The Coca–Cola Corporation, Defendant.

Civil Action No. 84–1021, Civ–T–15

CONSENT DECREE

A Complaint has been filed herein by the United States of America for assessment of a civil penalty and injunctive relief against The Coca–Cola Company, for discharges of pollutants in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, at defendant's Auburndale, Florida facility. The parties by their respective attorneys, having consented to the entry of this Decree without trial or adjudication of any issue of fact or law, agreeing that such Decree is in the public interest, and without this Decree constituting an admission of fact or law by any party, it is therefore, ORDERED, ADJUDGED and DECREED as follows:

I.

This Court has jurisdiction over the subject matter and over the parties consenting hereto. The Complaint states a claim upon which relief may be granted against the defendant pursuant to Section 309 of the Clean Water Act, 33 U.S.C. § 1319.

II.

The Consent Decree shall apply to and be binding upon the defendant, its officers, agents, servants, employees, successors, assigns and all persons, firms and corporations acting under, through or for it, and upon those persons, firms and corporations in active concert or participation with it. Notice of this Consent Decree shall be given to any successors in interest prior to transfer of the facility.

III.

In order to resolve this case without trial or further litigation, defendant shall pay the sum of $50,000 in full and final settlement of all civil violations alleged in the Complaint. Within thirty (30) days after this Consent Decree is entered by the Court, defendant shall tender to plaintiff at the office of the United States Attorney for the Middle District of Florida, a certified or cashier's check payable to the "Treasurer of the United States" in the amount of $50,000.

IV.

Defendant shall be required to continue to comply with all provisions of NPDES Permit No. FL0000418. In addition, defendant shall take all actions necessary to cease the discharge of all wastewaters currently discharged through NPDES permit outfall 001 in accordance with the following schedule:

| Task to be Accomplished | Date |
| --- | --- |
| a. Complete site survey, site hydrogeological studies, system design and apply for a construction permit to the Florida Department of Environmental Regulation (DER) in accordance with the work plan attached hereto as Appendix A | December 15, 1985 |
| b. Start site construction | within 90 days of issuance of construction permit from DER |
| c. Start system test | within one year from the date of issuance of construction permit from DER |

| Task to be Accomplished | Date |
|---|---|
| d. Cease discharge of outfall 001 wastewaters to surface waters | May 15, 1987 |

## V.

Defendant shall provide the Water Management Division, United States Environmental Protection Agency, Region IV, 345 Courtland Street, Atlanta, Georgia 30365, with progress reports 15 days after the milestone dates listed above detailing all actions taken toward completion of the measures listed in Paragraph IV. Such report shall include notification of problems anticipated or encountered by defendant which might place the company out of compliance with the terms of this Decree. These reports shall be in addition to any other reports required by Defendant's NPDES permit.

## VI.

Defendant agrees to pay stipulated penalties for failure to meet each of the milestone dates listed in Paragraph IV, above, or failure to submit progress reports. The penalties for failure to meet each milestone date shall be as follows:

| Period of Failure to Comply | Penalty per Day |
|---|---|
| 1st to 15th day | $ 500 |
| 15th to 45th day | $ 750 |
| 45th to 180th day | $1000 |
| over 180 days | $1500 |

## VII.

Defendant shall, at a minimum, comply with the following interim effluent limitations at outfall 001 from the date of entry of this Decree until the date specified in Paragraph IV.d., above:

| Effluent Characteristic | Discharge Limitations | | | |
|---|---|---|---|---|
| | kg/day (lbs/day) | | Other Units (Specify) | |
| | Daily Avg | Daily Max | Daily Avg | Daily Max |
| Flow–m$^3$/Day (MGD) | — | — | — | — |
| BOD$_5$ | 140 (307) | 280 (614) | 23 mg/1 | 46 mg/1 |
| Total Suspended Solids | 200 (441) | 400 (882) | 33 mg/1 | 66 mg/1 |
| Total Nitrogen (as N) | 32 (71) | 64 (142) | 5.3 mg/1 | 10.6 mg/1 |
| Fecal Coliform | — | — | | |
| Dissolved Oxygen | — | — | Minimum 7.0 mg/1 | |
| pH | 6–8.5 standard units | | | |

There shall be no discharge of floating solids or visible foam in other than trace amounts.

## VIII.

Defendant agrees to pay a stipulated civil penalty for each violation of any interim effluent discharge limitation set forth in Paragraph VII, above. Defendant shall pay a stipulated civil penalty for violation of each interim effluent discharge limitation as follows:

(a) *Daily Maximum Violations*

(1) For each violation of a daily maximum or minimum limitation set forth in Paragraph VII., defendant will pay the sum of $250 per day for each limitation violated;

(2) provided, however that when defendant does not meet any of said limitations by a factor of two or more for maximum limitations or by one half for minimum limitations, defendant will pay the sum of $500 per day for each limitation violated.

(b) *Daily Average Violations*

(1) Defendant will pay the sum of $100 per day for each day defendant discharged pollutants during any month that defendant did not meet the daily average limitation;

(2) provided, however, that when defendant fails to meet the daily average limitation by a factor of two or more, defendant will pay the sum of $200 for each day defendant discharged pollutants during any month that de-

fendant violates the daily average limitation.

Such payment is not required where defendant is able to establish that an upset, as defined in 40 C.F.R. 122.41(n) or successor regulation, has occurred and that the conditions necessary for demonstration of an upset, including notification requirements, have been met.

### IX.

Commencing on the 28th day of the month following the date of entry of this Consent Decree and on the 28th day of each month thereafter until the termination of this Consent Decree, the defendant shall notify the Water Management Division, United States Environmental Protection Agency, Region IV, 345 Courtland Street, Atlanta, Georgia 30365, in writing, of each violation of a milestone date set forth in Paragraph IV or violation of an interim effluent limitation that occurred during the preceding month. If a milestone date is violated, the report shall state the number of days of such violation and estimated date completion will be achieved. If an interim effluent limitation is violated, then the report shall state for each parameter violated, the amount of the pollutant discharged, the date of the discharge and any other information listed in 40 C.F.R. 122.-41(1)(6) or any successor regulation. A copy of the report, accompanied by the defendant's penalty payment as stipulated in Paragraphs VI and VIII for all violations that occurred during the period covered by the report, shall be mailed to the United States Attorney for the Middle District of Florida. Payment shall be made by check payable to the "Treasurer of the United States." Each payment shall be accompanied by a short written statement explaining how the total penalty amount was computed. The stipulated civil contempt penalties set forth above shall be in addition to any other remedies or sanctions which may be available to EPA.

### X.

If any event beyond the control of defendant occurs which causes or may cause a delay in the achievement of any milestone date in Paragraph IV, above, defendant shall notify EPA orally, within six (6) days of the event. A written report of said event shall be submitted by certified mail to EPA and counsel of record for the United States, within fifteen (15) days of the date of the event. Said report shall describe the nature of the delay, anticipated length of the delay, the cause(s) of the delay, and the measure(s) taken or to be taken to prevent or minimize any such delay and efforts taken to comply with the pertinent requirements of this Decree as soon as possible, and the timetable by which those measures are proposed to be implemented.

Failure by the defendant to comply with the notice requirements of this section shall render this section void and of no effect as to the particular incident involved.

If the parties agree that the delay or anticipated delay in compliance with the requirements of Paragraph IV have been or will be caused by circumstances beyond the control of defendant, the parties shall stipulate to such agreement in writing and submit such agreement to the Court. In the event the parties cannot agree, then any party may submit the matter to this Court for resolution.

The burden of proving that any delay is caused by circumstances beyond the control of defendant, and the length of the delay attributable to such circumstances, shall rest with defendant. Financial, economic or business conditions or changes in same, unanticipated or increased costs or expenses, or problems relating to technological infeasibility associated with the implementation of actions called for by this Decree, shall not be a basis for changes in this Decree or extensions of time.

### XI.

During the pendency of this Consent Decree, defendant shall allow EPA or its authorized representative to enter the Auburndale facility at reasonable times for the purpose of examining and inspecting the facility and copying records, logs, contracts or other documents which EPA

needs to assess compliance with the Consent Decree.

## XII.

This Consent Decree is not and shall not be interpreted to be a permit or permit modification for the discharge of pollutants under Section 402 of the Clean Water Act, 33 U.S.C. § 1342, nor shall it in any way relieve defendant of any obligation imposed by such Act or any permit issued thereunder, or of its obligation to comply with any other local, state or federal law in any way related to the subject of this Consent Decree. Nothing contained herein shall be construed to prevent or limit plaintiff's rights to obtain penalties or injunctive relief under Section 309 of the Clean Water Act for violations not specifically alleged in the Complaint or for causes of action which have arisen or may arise under other federal statutes and regulations.

## XIII.

The court shall retain jurisdiction to enforce the terms and conditions of this Decree until its termination.

## XIV.

With the exception of payment of any outstanding penalties, this Consent Decree shall terminate when EPA notifies the Court that defendant has fulfilled the conditions of Paragraph IV of this Decree and has been in continuous compliance with the terms and conditions of its NPDES permit for a period of one (1) year.

## XV.

Pursuant to the policy of the Department of Justice codified at 28 C.F.R. 50.7, which provides the opportunity for public comment on the judgment of actions to enjoin the discharge of pollutants into the environment, this Decree as signed by the parties, will be lodged with the Court to allow for public comment for the requisite thirty (30) days prior to submission to the Court for entry.

## XVI.

Each party shall bear its own costs of this action.

**1562**

WE HEREBY CONSENT to the entry of this Decree.

FOR THE COCA-COLA COMPANY

*[signature]*

FOR THE UNITED STATES OF AMERICA

*[signature]*

F. HENRY HABICHT, II
Assistant Attorney General
Land and Natural Resource Division
U.S. Department of Justice
Washington, D.C. 20530

United States Attorney

*[signature]*
CHARLES H. TISDALE, JR.
King & Spaulding
2500 Trust Company Tower
Atlanta, Georgia 30303

By: *[signature]* Gary J. Takacs
Assistant United States Attorney
May 20, 1986

*[signature]*
MICHAEL D. MARTIN, P.C., r

*[signature]* Michael A. Alushin, Acting
Martin & Martin
200 Lake Morton Drive
Suite 300
Lakeland, FL 33801

Assistant Administrator for
 Enforcement and Compliance
 Monitoring
U. S. Environmental Protection
 Agency
Washington, D. C. 20460

*[signature]*
QUENTIN C. PAIR
Attorney, Environmental Enforcement
 Section
Land and Natural Resources Division
U. S. Department of Justice
Washington, D. C. 20530
(202) 633-1999

FOR SIERRA CLUB

_____

## ORDER

JUDGMENT IS HEREBY ORDERED in accordance with the foregoing Consent Decree.

DATE: _____ _____
 United States Judge

_____

Coca–Cola Foods Auburndale, Florida—Proposed Sprayfield

The proposed sprayfield site is located approximately 7 miles northeast of the existing wastewater plant. The sprayfield site, known as the Florida Gold Grove consists of approximately 490 acres of citrus grove. Complete Florida Gold grove property is in excess of 1000 acres. The planted grove occupies a ridge located east of Lake Mattie and north of Lake Alfred. The remainder of the property is unsuitable for agricultural purposes. Coca–Cola Foods currently owns the property.

Design flow for the Florida Gold grove is 2.0 mgd. Should flow requirements increase in the future, an adjacent 130 acre company-owned grove is available for expansion.

Distribution will be effected by connecting the new transmission main to the existing grove, solid set irrigation system at numerous locations. A stormwater control system will be implemented that will contain, on site, all runoff from a 25–year, 24–hour storm. The new transmission pipeline will be routed along railroad and county road right of ways. If a storm exceeds the 25–year, 24–hour maximum rainfall design, then the wastewater will be recirculated and not discharged.