ATLANTIC STATES LEGAL FOUNDA-
TION, INC. and Citizens for a Better
Environment, Plaintiffs,

v.

KOCH REFINING
COMPANY, Defendant.

No. Civ. 4–87–364.

United States District Court,
D. Minnesota,
Fourth Division.

March 9, 1988.

Charles H. Nauen, Richard H. Plunkett, Opperman & Paquin, Minneapolis, Minn., for plaintiffs.

Larry D. Espel, James A. Payne, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., for defendant.

Jerome G. Arnold, U.S. Atty., and Roylene A. Champeaux, Asst. U.S. Atty., Minneapolis, Minn., and Susan L. Schneider, Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to dismiss and on plaintiffs' motion for consolidation. Defendant's motion will be denied. Plaintiffs' motion will be granted.

### FACTS

This action is a citizen suit brought under section 505(a) of the Clean Water Act (Act), 33 U.S.C. § 1365(a). Plaintiff Atlantic States Legal Foundation (ASLF) is a non-profit New York corporation with members in various states (including Minnesota) dedicated to protecting and restoring natural resources, particularly water resources. Complaint par. 6. Citizens for a Better Environment (CBE) is also a non-profit organization with a multi-state membership dedicated to protecting and restoring natural resources. Complaint par. 8. Defendant Koch Refining Company is a Minnesota corporation which operates a petroleum refinery in Rosemount, Minnesota. Jurisdiction of the Court is properly invoked under 33 U.S.C. § 1365(a).

On April 13, 1987 ASLF gave both the Environmental Protection Agency's (EPA) administrator and the Minnesota Pollution Control Agency (MPCA) a sixty-day notice [1] of its intention to commence suit against Koch for violations of the Act committed in 1985 and 1986 and on information and belief since 1980. Complaint Exh. A. Neither the EPA nor the MPCA commenced

---

1. The sixty-day notice requirement is a precondition to the commencement of citizen suits under section 505 of the Act, 33 U.S.C. § 1365(b)(1)(A). In the event either the administrator or the state commences a civil or criminal action to enforce compliance with the standards in the intervening sixty-day period then the citizen-plaintiff is barred from commencing its own suit and is limited to intervention in the governmental action. 33 U.S.C. § 1365(b)(1)(B); *Gwaltney v. Chesapeake Bay Foundation, Inc.,* — U.S. —, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987). Moreover, a citizen suit seeking civil penalties (as opposed to injunctive relief) is also barred if the administrator or state commences an administrative civil penalty assessment within the sixty-day period. *See* Water Quality Act of 1987, Pub.L. No. 100–4, § 314(a), 1987 U.S.Code Cong. & Admin.News (101 Stat.) 7, 47–48 (adding section 309(g)(6)(A) of Clean Water Act) (to be codified at 33 U.S.C. § 1319(g)(6)(A)).

any civil or criminal court actions or civil penalty assessments regarding Koch's alleged violations in the ensuing sixty days.[2] On July 13, 1987 plaintiffs commenced this action against Koch by filing and serving a complaint.

The complaint alleges that Koch discharges approximately 213 million gallons of waste per day into the Mississippi River near the Rosemount refinery. Complaint par. 12. It further alleges that since 1982 Koch's discharges from the Rosemount refinery have been in violation of the effluent discharge limits [3] of Koch's National Pollutant Discharge Elimination System (NPDES) permit [4] MN000418 issued by the MPCA. Complaint par. 16–18. The complaint requests declaratory and injunctive relief, an order requiring the defendant to pay civil penalties, as well as costs, attorneys' fees and expert witness' fees.

Defendant filed its answer on August 3, 1987. The parties engaged in extensive settlement negotiations through mid-October 1987. On October 26, 1987 the Magistrate established a pretrial schedule in which discovery was to terminate on December 1, 1988 and trial set for March 1, 1989 if necessary. On October 13, 1987 the United States commenced its own action against Koch for permit violations dating back to 1984 by filing a complaint in Minnesota federal district court. *United States of America v. Koch Refining Co.,* CIVIL 3–87–708.

The parties dispute the degree of similarity between the two actions. The two major differences between the actions are (1) the present action alleges permit violations dating back to 1982 whereas the United States action only alleges violations dating from 1984; and (2) the United States action asserts many effluent violations, as well as sampling, laboratory and record keeping violations [5] not contained in plaintiffs' complaint. Plaintiffs contend these differences are relatively minor in light of the general identity of issues presented and the liberal amendment of pleadings philosophy contained in Fed.R.Civ.P. 15. *See* Plaintiffs' Letter to the Court of January 14, 1988 at 3. Both the defendant and the United States differ with plaintiffs' assessment, however. The United States notes that the differences between the two suits potentially affect the scope of discovery and trial of each. *See* United States Justice Department's Letter to the Court of January 25, 1988. Defendant also contends the scope

---

**2.** The MPCA did issue a notice of violation to Koch on April 13, 1987. However, this did not amount to commencing an action "in a court" of the United States within the meaning of 33 U.S.C. § 1365(b)(1)(B) and defendant does not contend otherwise. *See, e.g., Sierra Club v. Chevron,* 834 F.2d 1517, 1525 (9th Cir.1987). Nor does it constitute the commencement of a civil penalty assessment.

**3.** An "effluent limitation" is "any restriction established by a State or the [EPA's] Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters ... including schedules of compliance." 33 U.S.C. § 1362(11). A "point source" is defined as "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

**4.** The Clean Water Act prohibits the discharge of all pollutants except as authorized by the EPA. 33 U.S.C. § 1311. The EPA sets discharge limits for a wide variety of industrial polluters. Section 402 of the Act, 33 U.S.C. § 1342, establishes the National Pollution Discharge Elimination

System which allows the administrator of the EPA to issue permits which authorize certain levels of discharges. *See Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1518–19 (9th Cir. 1987) (for concise review of NPDES).

The permit recipient is obligated to observe all standards set by the EPA and to monitor and report on its own compliance with those standards. 33 U.S.C. § 1342, 1318(a)(4)(*a*). The permit system is the only means by which a discharger of pollutants may escape the total prohibition of discharge from point sources established by the Act. *National Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1374 (D.C.Cir.1977). Any discharge except pursuant to permit is illegal. *United States v. Tom–Kat Development, Inc.,* 614 F.Supp. 613, 614 (D.Alas. 1985). Section 1342(b) authorizes the EPA administrator to approve state requests to administer permit programs for discharges into the navigable waters within the state's jurisdiction.

**5.** The Act provides that each permit recipient is required to monitor and report on its compliance with the permit. In particular, the permit holder is required to maintain, install and use monitoring equipment and sample its effluents. 33 U.S.C. § 1318(a)(4)(A)(iii), (iv).

of the United States action is far broader than the present case.

Plaintiffs request that the Court consolidate the two actions pursuant to Fed.R. Civ.P. 42(a). Defendant opposes consolidation and moves the Court to dismiss the present action on the grounds it has been supplanted by the United States action. The United States takes no position on defendant's motion for dismissal but states that it does not oppose consolidation of discovery and pretrial motions in the two actions. The State of Minnesota has filed a motion to intervene in both actions, opposes defendant's motion to dismiss this action and is in favor of consolidation. *See* Letter of Attorney General's Office to the United States Magistrate of February 22, 1988. It is appropriate to address defendant's motion for dismissal first, since it is potentially dispositive of the remaining issue.

## DISCUSSION

I. *Defendant's Motion to Dismiss*

Citizen suits are governed by section 505 of the Act, 33 U.S.C. § 1365 which provides in relevant part:

**(a) Authorization; jurisdiction**

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter ...

....

**(b) Notice**

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator[.]

There is no question here that plaintiffs complied with the requirements of section 1365. ASLF provided the requisite notice and waited sixty days until commencing suit.[6] At the time plaintiffs commenced this action neither the EPA nor the MPCA were diligently prosecuting an enforcement action in a United States or state court or a civil penalty assessment. Thus, this action was properly filed under section 1365. Defendant contends, however, that in light of the Supreme Court's recent decision in *Gwaltney v. Chesapeake Bay Foundation,* — U.S. ——, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Court has discretion to dismiss this action based on the subsequently-filed governmental action.

Contrary to defendant's argument, neither *Gwaltney* nor the Clean Water Act or its legislative history support defendant's assertion that the Court has discretion to dismiss a properly filed citizen suit in light of a later governmental action covering the same or similar issues. The sole issue before the Court in *Gwaltney* was whether section 1365(a) conferred federal jurisdiction over citizen suits for wholly past violations. *Gwaltney,* 108 S.Ct. at 378. The Court concluded it did not based in large part on the pervasive use of the present tense in section 505(a). *Gwaltney,* 108 S.Ct. at 381–83. The *Gwaltney* Court noted that its holding was buttressed by the legislative history of the Act:

The bar on citizen suits when governmental enforcement action is underway suggests that the citizen suit is meant to

---

6. Although CBE was not a signatory party to the notice letter, it is entitled to piggyback on ASLF's compliance. *See Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Labs,* 617 F.Supp. 1190, 1194 (D.N.J.1985) (holding that because one plaintiff complied with notice requirement other plaintiff could be deemed to have substantially complied as well).

supplement rather than to supplant governmental action. The legislative history of the Act reinforces this view of the role of the citizen suit. The Senate Report noted that "[t]he Committee intends the great volume of enforcement actions [to] be brought by the State," and that citizen suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." ... Permitting citizen suits for wholly past violations of the Act could undermine the supplementary role envisioned for the citizen suit.

108 S.Ct. at 383 (citation omitted).

Defendant contends *Gwaltney*'s emphasis on the secondary role of citizen suits, a role which the legislative history clearly confirms, provides support for its argument that dismissal is appropriate now that a governmental enforcement action is under way. Certainly, defendant's argument has considerable merit from the standpoint of promoting judicial economy and the underlying policies of the Act, as well as minimizing potential liability to defendant. The citizen enforcement mechanism of the act was designed "first to act as a spark to ignite agency enforcement and second to act as an alternative enforcement mechanism absent agency enforcement." *Connecticut Fund for Environment, Inc. v. Upjohn Co.*, 660 F.Supp. 1397, 1403 (D.Conn.1987), *citing Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 218 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). To plaintiffs' well-deserved credit, both those policies have effectively been served. Plaintiffs have sparked vigorous governmental enforcement. Given the governmental efforts there seems little need for an alternative enforcement mechanism. Finally, plaintiffs' continuing efforts are plainly prejudicial to defendant to the extent that they expose defendant to additional attorneys' fees liability.

The fact that policy reasons support defendant's position does not, however, without more, create a judicial gloss on the plain language of section 1365. As the Supreme Court stressed in *Gwaltney*, "the starting point for interpreting a statute is the language of the statute itself." 108 S.Ct. at 381, *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Moreover, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *GTE Sylvania*, 447 U.S. at 108, 100 S.Ct. at 2056. Every court which has considered the issue has concluded that section 1365 precludes dismissal of a properly filed citizen suit as a result of a subsequent governmental enforcement action. Thus, in *Chesapeake Bay Foundation v. American Recovery Co., Inc.*, 769 F.2d 207, 209 (4th Cir.1985) (per curiam), the Fourth Circuit explicitly rejected, albeit in dicta,[7] the position advocated by defendant and adopted by the lower court below:

> The sixty day waiting period of § 1365(b)(1)(A) gives the government the opportunity to act and to control the course of the litigation if it acts within that time period. If the government delays, then the citizens may go forward with their own suit, unless, before they file [a governmental enforcement proceeding has been commenced].... In this case, the government did not act within the sixty-day waiting period and it had not yet filed suit when plaintiffs filed their independent action. Therefore, plaintiffs' suit was not barred, and if this was the basis for the district court's dismissal, that decision was incorrect. *The district court has available means, including consolidation, citizen intervention (§ 1365(b)(1)(B), and intervention by the Administrator (§ 1365c(2)), to manage its docket and to protect defendants from duplicative litigation, but dismissal of a previously filed citizen suit is not an appropriate remedy.*

**7.** The statement in *Chesapeake Bay Foundation* was technically dicta because plaintiffs' appeal from the lower court order was dismissed as moot based on developments subsequent to the dismissal, namely a settlement between the government and the EPA to which plaintiffs did not object. 769 F.2d at 210. Nonetheless, the statement is emphatic dicta.

*Chesapeake Bay Foundation,* 769 F.2d at 208–09 (emphasis added). Similarly, in *Connecticut Fund for Environment v. Job Plating Co.,* 623 F.Supp. 207, 215–16 (D.Conn.1985) the court also rejected the argument that a governmental enforcement action commenced after a citizen suit barred the citizen suit. *See also Upjohn Co.,* 660 F.Supp. at 1404 (under section 1365(b)(1)(B) court had to apply inflexible rule of determining jurisdiction over citizen suit at time complaint was filed). Significantly, defendant is unable to point to any authority holding otherwise. As plaintiffs point out, *Montgomery Environmental Coalition Citizens Coordinating Committee on Friendship Heights v. Washington Suburban Sanitary Commission,* 607 F.2d 378 (D.C.Cir.1979), the case advanced by defendant, is simply inapposite. That case involved dismissal of a citizen suit under the doctrine of primary jurisdiction because the technical issues involved were best left addressed to the EPA in the first instance. Thus, the issue in *Montgomery* was wholly unrelated to the issue present in the case at bar.

■ In fairness to defendant's position it should be noted that defendant is not advocating that a properly-filed citizen suit automatically be barred by a later-filed governmental enforcement action. Such an extreme position would obviously turn the language of section 1365(b)(1)(B) on its head. Rather, defendant suggests the Court can evaluate, on a case-by-case basis, whether permitting a properly-filed citizen suit to go forward would serve the underlying objectives of the Act in light of the scope and objectives of the subsequently-filed governmental action. *See Connecticut Fund,* 623 F.Supp. at 216 n. 7 (noting that even if subsequently filed governmental suit could be deemed to be "diligent prosecution" under section 1365 it would still not bar citizen action because of basic differences in scope and objectives of the two suits). In support of its argument defendant cites to the following language in the Act's legislative history:

The Committee has provided a period of time after notice before a citizen may file an action against an alleged violator. The time between notice and filing of the action should give the administrative enforcement office an opportunity to act on the alleged violation.

It should be emphasized that if the agency had not initiated abatement proceedings following notice or if the citizen believed efforts initiated by the agency to be inadequate, the citizen might choose to file the action. In such case, the courts would be expected to consider the petition against the background of the agency action and could determine that such action would be adequate to justify suspension, dismissal, or consolidation of the citizen petition. On the other hand, if the court viewed the agency action as inadequate, it would have jurisdiction to consider the citizen action notwithstanding any pending agency action.

S.Rep. No. 414, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News pp. 3668, 3745–46. It is clear from the context of this language that the "backdrop of the agency action" refers to action taken before, not after the filing of the citizen suit. *See Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d at 1525 n. 6. Accordingly, this language does not constitute a clear legislative expression favoring dismissal of a properly filed citizen suit because of a subsequent governmental enforcement action. The Court therefore concludes that it has no discretion to dismiss the present action. However, as plaintiffs are aware, under section 1365(d) of the Act the Court can protect defendant from unnecessary exposure to attorneys' fees liability by refusing to award fees for duplicative litigation. The Court intends to exercise its discretion under that section, if necessary, to protect defendant from unnecessary monetary exposure. Accordingly, the Court will deny defendant's motion.

## II. *Consolidation*

■ Plaintiffs moves the Court to consolidate this action with the United States action pursuant to Fed.R.Civ.P. 42(a) which provides:

When actions involving a common question of law or fact are pending be-

fore the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The Court has broad discretion in determining whether consolidation is desirable. C. Wright & A. Miller, *Federal Practice and Procedure Civil:* § 2382 (1971). As plaintiffs note, courts have consistently used consolidation as a management technique when confronted with separate citizen and government enforcement actions under the Act. *See, e.g., Sierra Club v. Coca–Cola Corp.,* 673 F.Supp. 1555, 1156 (M.D.Fla. 1987) (noting that citizen suit and EPA action were consolidated on motion of citizen plaintiff); *State of Michigan v. City of Allen Park,* 573 F.Supp. 1481, 1484 n. 5 (E.D.Mich.1983) (same). Here, both plaintiffs and the State of Minnesota favor consolidation. The United States does not oppose consolidation of the discovery and pretrial motions in the two cases. In addition, it is willing to comply with the pretrial schedule established by the Magistrate in the case at bar. However, the United States requests that the Court hold off deciding whether to consolidate trials until a later date. Because there are common issues of fact and law in both actions the Court concludes consolidation is appropriate with regard to pretrial discovery and motions in both actions. However, the Court will not make a decision as to trial consolidation until a later date.

Based on the foregoing, and upon review of all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that

1. defendant's motion to dismiss is denied; and

2. plaintiffs' motion to consolidate this action with the United States action in CIV-IL 3–87–708 is granted with regard to pretrial discovery and motions.