LONG ISLAND SOUNDKEEPER FUND, INC., et al., Plaintiffs,

State of Connecticut, Intervenor–Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION and Joel A. Miele, Commissioner, Defendants.

No. CV 98 1635.

United States District Court, E.D. New York.

Nov. 23, 1998.

Karl S. Coplan, Pace Environmental Litigation Clinic, White Plains, NY, for the Plaintiffs.

Richard F. Webb on Behalf of, Richard Blumenthal Attorney General, For the State of Connecticut, Hartford, CT, for the Intervenor-Plaintiff.

Susan E. Amron, Jane Houdek, & Christopher King, On Behalf of Michael D. Hess, Corporation Counsel of the City of New York, New York City, for Defendants.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiffs bring this action pursuant to the citizen suit provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging defendants New York City Department of Environmental Protection ("DEP" or the "City") and Joel A. Miele, DEP's Commissioner, violated discharge permits issued by the New York State Department of Environmental Conservation ("DEC" or the "State"). Plaintiffs claim that DEP exceeded its permit limitations at eight sewage treatment plants that discharge pollutants into the East River and Jamaica Bay. The State of Connecticut, granted permission to intervene in this action, alleges violations only at those plants that discharge pollutants into the East River. Defendants move to dismiss the complaint or, alternatively, to stay the proceedings pending the resolution of a state court enforcement action brought by the State of New York regarding largely the same permit violations. Additionally, defendants move to dismiss plaintiffs' claims that DEP is violating its settleable solids permit limitations. The motion to dismiss the complaint or to stay the proceedings is denied. The motion to dismiss those claims regarding DEP's settleable solids limitations is granted.

## BACKGROUND

New York State DEC Region 2 is responsible for administering New York City's State Pollutant Discharge Elimination System ("SPDES") permits [1] for the discharge of pollutants into navigable waters. Newman Decl. ¶ 1. DEC, in accordance with 33 U.S.C. § 1342, implements federal CWA standards through the issuance of these permits. Id. ¶ 2. DEC has issued fourteen permits to DEP for fourteen sewage treatment plants. Id. ¶ 3. Each permit limits the amounts of certain pollutants that may be discharged from each facility. Id.

On December 18, 1997, plaintiffs sent a letter to defendant DEP alleging it exceeded the discharge limits in its SPDES permits for the sewage plants in Bowery Bay, Tallman Island, Wards Island, Hunts Point, 26th Ward, Coney Island, Jamaica, and Rockaway. Coplan Aff. ¶ 9. This letter also provided notice to DEP that plaintiffs intended to file a civil action under the citizen suit provision of the Clean Water Act. Id. A copy of this notice letter was sent to DEC and the United States Environmental Protection Agency ("EPA"). Id.

Under the CWA, private citizens must provide notice of their intent to sue sixty (60) days before they file their suit. 33 U.S.C. § 1365(b)(1)(B). As plaintiffs' notice letter was sent December 18, 1997, they were legally authorized to file suit on or after February 16, 1998 if no enforcement action had been taken by DEC against DEP for the same violations. See 33 U.S.C. § 1365(b)(1)(B). On February 6, 1998, plaintiffs and DEC agreed that neither party would file any action prior to February 23, 1998. Coplan Aff. ¶ 12; Pls.' Ex. A.

On February 11, 1998, plaintiffs' attorneys met with DEC officials to discuss defendants' compliance with their permit restrictions. Coplan Aff. ¶ 14. On February 20, 1998, plaintiffs and DEC again agreed to postpone filing any action against defendants so that DEC and attorneys for both plaintiffs and defendants could meet to discuss the alleged violations. Id. ¶ 16. Significantly, plaintiffs agreed not to file before March 9, 1998, thereby allowing DEC a clear opportunity to file first and preclude private action. Id.; Pls.' Exs. B & C.

On March 6, 1998, DEC requested that plaintiffs again postpone filing suit to a date

---

1. Section § 1342 of Title 33 of the United States Code authorizes state issuance of National Pollutant Discharge Elimination System Permits ("NPDES"). The state issued permits must comply with the standards set forth by the Clean Water Act and federal regulations and may also, as seen here, impose more stringent requirements. For the purposes of this opinion "SPDES" is used to refer to the permits issued by the New York State DEC. It is noted that the term "NPDES" has been used in cases, cited to in this opinion, to refer to these state issued permits.

later than March 9, 1998 because DEC was not prepared to file on March 6, 1998 as previously agreed. Coplan Aff. ¶ 19. Plaintiffs would not agree to any further extension. *Id.* Plaintiffs filed this action at 8:36 a.m. on March 9, 1998, before DEC had taken any enforcement action against defendants. *Id.* ¶ 21; Pls.' Ex. D. DEC filed its state court action at 9:00 a.m. that same day. Pls.' Ex. E.

Plaintiffs allege in their complaint that the City discharged fecal coliform, nitrogen, settleable solids, and biological oxygen in amounts greater than the levels authorized in DEP's permits. Plaintiffs seek to enjoin DEP from further violating the permits and request that the Court order the City to pay $25,000 in civil fines for each day DEP is in violation. DEC's state court complaint alleges essentially the same violations under New York State Environmental Conservation Law ("ECL") and seeks the same relief.[2] Defs.' Ex. B.

## DISCUSSION

The CWA contains two limitations on a citizen's right to bring a private enforcement action. First, § 1365(b)(1)(A) requires that notice of the alleged violation be provided to the alleged violator, the EPA, and to the state enforcement agency at least sixty days before the citizen suit is filed. 33 U.S.C. § 1365(b)(1)(A). Second, § 1365(b)(1)(B) provides that no private enforcement action may be commenced if the "State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State" seeking the same relief. 33 U.S.C. § 1365(b)(1)(B); *see Friends of the Earth v. Laidlaw Envtl. Serv.,* 890 F.Supp. 470, 485 (D.S.C.1995).

Defendants concede that plaintiffs satisfied the notice requirement. However, defendants contend that DEC is "diligently prosecuting" its enforcement action in state court pursuant to § 1365(b)(1)(B) and that the citizen suit before this Court must therefore be dismissed. Plaintiffs argue that DEC's state court action does not bar their citizen suit

because it was properly filed before DEC filed its state court action.

■ It is well established that "the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). Section 1365(b)(1)(B) clearly states that a citizen suit may not be brought against an alleged violator if the "State *has* commenced *and* is diligently prosecuting a civil or criminal action" seeking the same relief. 33 U.S.C. § 1365(b)(1)(B) (emphasis added). The language of this statute "clearly contemplates action prior to the filing of a citizen suit." *Conn. Fund for the Env't v. Job Plating Co.,* 623 F.Supp. 207, 215 (D.Conn.1985) (Cabranes, J.).

In *Job Plating,* a citizen suit was filed on November 17, 1983 against the Job Plating Company alleging it was violating its NPDES permits. *Id.* at 210. The State of Connecticut then filed a state court action on March 19, 1984. *Id.* at 211. The defendant moved to dismiss the citizen suit pursuant to § 1365(b)(1)(B), arguing that the State's subsequent state court action amounted to "diligent prosecution" that precluded the citizen suit. *Id.* at 215. The court, however, found that only where there has been a prior state enforcement action "is it possible to consider whether that action is 'diligent prosecution' that would preclude the filing of the citizen suit." *Id.* "[A]ctions taken by the state after the filing of a citizen suit may not be considered as constituting 'diligent prosecution' pursuant to [§ 1365(b)(1)(B) ]." *Id.* at 216. No court has held otherwise.

■ The fact that DEC filed its complaint in state court less than one-half hour after plaintiffs filed their complaint in this Court does not change the fact that plaintiff's suit was filed first. In *Connecticut Fund for the Environment v. Upjohn Co.,* 660 F.Supp. 1397 (D.Conn.1987), the court concluded that

---

**2.** Plaintiffs note that their complaint is more inclusive of DEP's effluent discharge violations. Pls.' Mem. of Law in Opp'n at 5 n. 1. Defendants

note that DEC's complaint includes 1998 violations that are not alleged in plaintiff's complaint. Defs.' Mem. of Law in Supp. at 9 n. 5.

a state enforcement action filed three days after a citizen suit was filed in federal court did not preclude the citizen suit from going forward. *Id.* at 1402–03. The court noted that the "sixty-day waiting period of § 1365(b)(1)(B) gives the government the opportunity to act and to control the course of the litigation if it acts within the time period. If the government delays, then the citizens may go forward...." *Id.* at 1404. The court concluded that it "must apply an inflexible rule which determines jurisdiction from the time of filing the complaint." *Id.* at 1404. Here, the State had that same opportunity, but relinquished it by their inaction.

In *Chesapeake Bay Foundation v. American Recovery Co.,* 769 F.2d 207 (4th Cir. 1985), the court found that a state enforcement action filed three hours after a citizen suit was filed did not preclude the citizen suit from going forward. Plaintiffs filed their citizen suit on January 23, 1984 at 12:34 p.m.; the state enforcement action was filed at 3:52 p.m. that same day. *Id.* at 207. The court found that "the verb tenses used in subsection (b)(1)(B) and the scheme of the statute demonstrate that the bar was not intended to apply unless the government files suit first." *Id.* at 208. The Fourth Circuit concluded that "the government did not act within the sixty-day waiting period and it had not yet filed suit when plaintiffs filed their independent action. Therefore, plaintiffs' suit was not barred." *Id.* at 208–09.

■ Defendants rely on two cases in which citizen suits were dismissed even though they were filed before any state enforcement action was taken: *Atlantic States Legal Foundation v. Eastman Kodak Co.,* 933 F.2d 124 (2d Cir.1991) and *United States Environmental Protection Agency v. City of Green Forest,* 921 F.2d 1394 (8th Cir.1991). However, neither case addresses the same issue presented here. In both cases, a citizen suit filed in federal court was dismissed when a later filed government enforcement action was resolved by consent decree. The dismissal in each case was based on the settlement of the issues and not on the diligent prosecution provision of the CWA. As stated by the Second Circuit in *Eastman Kodak,* "If the state enforcement proceeding has caused the violations alleged in the citizen suit to cease without any likelihood of recurrence—has eliminated the basis for the citizen suit—[then] ... the citizen suit must be dismissed." *Id.* at 127. In *Eastman Kodak,* the state negotiated an out-of-court settlement that potentially resolved the issues in the case. The court remanded the case to the district court to determine whether there remained "a realistic prospect of continuing violations." *Id.* If not, the district court was instructed to dismiss the citizen suit as moot. *Id.* Nothing in *Eastman Kodak* counsels in favor of dismissing plaintiffs' suit.

In sum, the language of the statute, as confirmed by available case analysis, makes clear that state prosecution of the same claims no matter how diligent, will not preclude a properly filed private action, or require its dismissal. To hold otherwise would undermine the Congress' clear intention to authorize private action under the prescribed circumstances and would remove the incentive benefits built into the legislation for prompt government action.

■ Defendants also argue that the Court should abstain from exercising jurisdiction over plaintiffs' suit by invoking the abstention doctrine articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Court in *Colorado River* articulated an abstention doctrine that may be invoked for reasons of judicial comity where there are parallel proceedings in both federal and state court. *Id.* at 818, 96 S.Ct. 1236. The Court found that a district court may abstain from exercising jurisdiction due to "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). The *Colorado River* abstention doctrine requires the balancing of several factors: 1) the inconvenience of the federal forum; 2) the avoidance of piecemeal litigation; 3) the order in which jurisdiction was obtained in the concurrent jurisdictions; 4) the existence of fed-

eral policy either in favor or against abstaining; 5) the identity of interests or parties in the two jurisdictions; 6) the existence of federal interests that federal courts may be more likely to enforce; 7) whether federal or state law addresses the merits of the case; and 8) whether the state court is adequate to protect the interests of the parties. *See Conn. Fund for Env't v. Upjohn Co.*, 660 F.Supp. at 1404 (citations omitted).

■ In weighing these factors, the court should consider that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236 (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). "[O]nly with the presence of exceptional circumstances will the existence of concurrent state proceedings warrant the abdication of 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *United States v. Cargill*, 508 F.Supp. 734, 748 (D.Del.1981) (quoting *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236).

■ Abstention is not appropriate in this case. None of the factors to be weighed when considering abstention supports the defendants' argument. This action, expressly authorized by Congress, is brought to enforce federally mandated emissions standards. The alleged violations of those standards, if proven, would almost inevitably impact on more than one state. The State of New York may seek to participate in the prosecution of alleged violations. Although any state's interest in its water quality must be respected, it cannot be overlooked that the premise to the disputes

in both federal and state court is found in federal law. Further, the defendants' position is convincingly undermined by its own inaction. The State DEC had the opportunity to take the lead in enforcing the prescribed standards, but declined to do so. Indeed the State had the opportunity to preempt all private enforcement efforts, but chose instead, for whatever reason, to delay enforcement initiatives despite plaintiffs' patient and deferential posture. To deny plaintiffs the opportunity now to seek compliance by the City as contemplated by Congress would essentially deprive them of the statutory right that Congress saw fit to confer upon them. For the same reasons, a stay of these proceedings is not appropriate and would effectively rewrite the citizen suit provision of the CWA.

■ Finally, plaintiffs allege that the Jamaica sewage plant violated the limits on settleable solids found in its SPDES permit. Compl. ¶¶ 46, 47, 63, and 68. Defendants contend that plaintiffs cannot enforce these permit provisions because the settleable solids restrictions were imposed by DEC under state law and are not required under federal law.[3] Defendants argue that the Second Circuit's holding in *Atlantic States Legal Found. v. Eastman Kodak Co.*, 12 F.3d 353 (2d Cir.1993), precludes citizens from suing to enforce permit provisions imposed under state law that are stricter than those required under federal law. The Court agrees.

In *Atlantic States*, the Second Circuit found that "state regulations, including the provisions of SPDES permits, which mandate 'a greater scope of coverage than that required' by the federal CWA and its implementing regulations are not enforceable through a citizen suit under 33 U.S.C. § 1365." *Id.* at 359 (quoting 40 C.F.R. § 123.1(i)(2)). The court explained, "States may enact stricter standards for wastewater

---

**3.** While current federal regulations regarding municipal sewage plants do not include settleable solids restrictions, *see* 40 C.F.R. § 133.102(a), (b), New York law specifically requires "the removal of substantially all floating and settleable solids." ECL § 17–0509. Plaintiffs do not dispute that New York law expands the scope of current federal limits on settleable solids found in § 133.102(a) and (b). Instead, plaintiffs claim

that "a former federal regulation," 40 C.F.R. § 125.58(m) (1979), requires similar limits and therefore "the state-issued permit does not impose a greater scope of coverage than required by the CWA." *See* Plaintiffs' Memo. at 27 n. 14. However, this regulation is no longer in effect. New York law includes restrictions on settleable solids that are not found in current federal law.

effluents than mandated by the CWA and federal EPA regulations. These states' standards may be enforced under the CWA by the states or the EPA, but private citizens have no standing to do so." *Id.* at 358 (citations omitted). The settleable solids limitations at issue in this case are stricter than those required under federal law. Accordingly, plaintiffs have no standing to sue DEP for violating the settleable solids provisions in its SPDES permits. *See Upper Chattahoochee Riverkeeper v. City of Atlanta,* 953 F.Supp. 1541, 1552 (N.D.Ga.1996) (construing *Atlantic States* to hold that "private citizens have no standing to enforce broader state regulations contained in NPDES permits"); *City of New York v. Anglebrook,* 891 F.Supp. 900, 904 n. 4 (S.D.N.Y.1995) ("[In *Atlantic States,*] the Second Circuit held that the district court lacked jurisdiction in a citizen suit where plaintiffs sought to enforce a state permit requirement that was stricter than the Clean Water Act and its implementing regulations.").

For the reasons stated above, defendants' motion to dismiss plaintiffs' citizen suit or to stay the proceedings pending the outcome of the state court action is denied. Defendants' motion to dismiss that part of plaintiffs' suit regarding DEP's settleable solids restrictions is granted.

SO ORDERED.