**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, *Plaintiff-Appellant*, v. CHICO SCRAP METAL, INC.; GEORGE SCOTT, SR.; GEORGE SCOTT, JR.; GEORGE W. SCOTT, SR., Revocable Inter Vivos Trust, *Defendants-Appellees*. | No. 11-16959 D.C. No. 2:10-CV-01207-GEB-GGH OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted
April 16, 2013—San Francisco, California

Filed July 22, 2013

Before:  Susan P. Graber and Morgan Christen, Circuit
Judges, and John R. Tunheim,* District Judge.

Opinion by Judge Graber

---

* The Honorable John R. Tunheim, United States District Judge for the
District of Minnesota, sitting by designation.

## SUMMARY[**]

### Environmental Law

The panel reversed the dismissal of a citizen suit under the Clean Water Act alleging that the defendants violated a National Pollutant Discharge Elimination System permit governing industrial storm water discharges at their scrap metal recycling facilities.

The panel held that 33 U.S.C. § 1365(b)(1)(B) did not bar the plaintiff conservation organization's claims even though a district attorney had filed prior criminal and civil actions against the defendants. The panel concluded that the state had commenced no action in court "to require compliance" with the storm water permit. The panel held that § 1319(g)(6)(A)(ii) also did not bar the plaintiff's claims because the state had commenced no administrative penalty action comparable to one under the Clean Water Act.

### COUNSEL

Andrew L. Packard (argued) and Emily J. Brand, Law Offices of Andrew L. Packard, Petaluma, California, for Plaintiff-Appellant.

Therese Y. Cannata, Cannata, Ching & O'Toole LLP, San Francisco, California, for Defendants-Appellees.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Harold M. Thomas, Special Deputy District Attorney, Office of Butte County District Attorney, Oroville, California, for Amicus Curiae.

**OPINION**

GRABER, Circuit Judge:

The Federal Water Pollution Control Act, or Clean Water Act ("the Act"), 33 U.S.C. § 1365(a)(1), allows a citizen to sue to enforce the Act's prohibition against discharging water pollutants without a National Pollutant Discharge Elimination System ("NPDES") permit. In this citizen suit, Plaintiff, California Sportfishing Protection Alliance, a conservationist organization, alleges that Defendants, Chico Scrap Metal, Inc.; George Scott, Sr.; George Scott, Jr.; and George W. Scott, Sr., Revocable Inter Vivos Trust, have violated an NPDES permit that governs industrial storm water discharges at three scrap metal recycling facilities that Defendants operate.

The district court dismissed this action after ruling that 33 U.S.C. § 1365(b)(1)(B) bars Plaintiff's claims. On appeal, Defendants argue that another statutory bar, 33 U.S.C. § 1319(g)(6)(A)(ii), also applies. We hold that § 1365(b)(1)(B) does not apply because the state has commenced no action in court "to require compliance" with the storm water permit and that § 1319(g)(6)(A)(ii) does not apply because the state has commenced no administrative penalty action comparable to one under the Act. We

therefore reverse the judgment of the district court and remand for further proceedings.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants own and operate three scrap metal recycling facilities in Butte County, California. The facilities receive scrap metal, salvage vehicles, and process other waste for recycling and disposal.

Defendants' facilities are subject to the requirements and conditions contained in California's Industrial Activities Storm Water General Permit ("the Permit"), an NPDES general permit issued by the California State Water Resources Control Board ("the Board") pursuant to its authority under the Porter-Cologne Water Quality Control Act, Cal. Water Code §§ 13370–13389.[2] A violation of the Permit is a violation of the Act, because the Act prohibits the discharge of any pollutant into the waters of the United States, except in compliance with an applicable NPDES permit. 33 U.S.C. §§ 1311(a), 1342(a)(1), (b) & (p).

In 2007, the California Department of Toxic Substances Control ("the Department") initiated an investigation of

---

[1] We express no view on the merits of any of Plaintiff's claims.

[2] The Board has authority to issue NPDES permits under the Porter-Cologne Act because the Clean Water Act allows states, after obtaining federal approval, to implement NPDES through state law and administrative actions. 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370(c) (providing that the state act "authorize[s] the state to implement the provisions of [the federal Act]"); 40 C.F.R. § 122.28(a) (authorizing the use of general permits in lieu of individualized NPDES permits).

Defendants' facilities after discovering that concrete and construction debris had been dumped in wetlands on some of Defendants' land. The Department extended the investigation to Defendants' three recycling facilities and found high levels of hazardous contamination. The Department ordered Defendants to "characterize" the extent of contamination, but Defendants did not comply.

In 2007 and 2008, the Butte County district attorney filed civil and criminal actions against Defendants, alleging numerous violations of state environmental and occupational safety laws. The civil complaint alleged that Defendants were liable under various state laws for "unlawfully stor[ing], transport[ing,] and dispos[ing] of hazardous waste." Specifically, the state asserted claims under California's Health and Safety Code, sections 25189.5 and 25189.6 (improper handling and disposal of hazardous waste); Business and Professions Code, sections 17203, 17204, 17206(b) (engaging in unfair business practices); and Fish and Game Code, section 5650(f) (depositing substances that are deleterious to fish, plant, or bird life into state waters). In two criminal actions, the state charged Defendants with violations of the Health and Safety Code, 25189.5(a) (disposing of hazardous waste without a permit), 25189.6(a) (reckless handling of hazardous waste), 25503.5(a) (failing to submit a hazardous material release response plan after notice), 25507 (failing to report immediately a release of hazardous substances), 25509(a) (failing to inventory hazardous substances), sections 42400(a) (violating air quality rules), 42400.1(a) (negligently emitting air contaminants), 42400.2(a) (knowingly emitting air

contaminants); Vehicle Code, section 11500 (acting as an automobile dismantler without a license or in violation of site requirements); Labor Code, section 6423 (violating hazardous substances removal protective standards in a workplace); Penal Code, sections 166 (criminal contempt), 373a (failing to abate a nuisance after notice), and 374.8 (depositing hazardous substances onto a road, street, highway, or into waters of the state); and Code of Regulations, title 22, section 66262.34(f) (failing to label hazardous waste containers).

In October 2008, Defendants entered into a plea agreement that resolved both the civil and the criminal proceedings. The agreement provided that Defendants would pay fines and serve a term of probation. Among other things, the agreement required Defendants to abide by three remedial action consent orders that the Department had issued during the previous month. Among other requirements, the consent orders required Defendants to clean up hazardous substances detected at the three facilities and to reduce potential human exposure to those substances. The plea agreement allowed Defendant Chico Scrap Metal to continue operating the facilities during the probation term so as to generate revenue to pay for the cleanups.

In January 2010, the Federal Environmental Protection Agency ("EPA") inspected Defendants' three facilities and found that the sites' storm water management systems failed to comply with the Permit. In March, Plaintiff sent Defendants, as well as state and federal agencies, notice of its

intent to sue Defendants under the Act for violations of the Permit. The notices alleged ongoing violations of the storm water permit at Defendants' three facilities. Neither state nor federal officials commenced any enforcement proceedings under the Act after receiving the notices.

In May 2010, Plaintiff filed this action. The complaint alleges violations of provisions of the Permit that (1) prohibit discharges of polluted storm water, (2) require preparation of a "Storm Water Pollution Prevention Plan," (3) require the use of certain pollution control technologies for storm water discharges, and (4) require implementation of a storm water monitoring and reporting program.

In June 2010, the California Water Quality Control Board issued notices to Defendants that they were in violation of the Permit, citing the January 2010 inspections. The notices requested that Defendants submit a report describing how the violations were being addressed.

Defendants then moved to dismiss this action, arguing that Plaintiff's claims were barred by one of the Act's "diligent prosecution" bars, 33 U.S.C. § 1319(g)(6)(A)(ii). The district court ordered supplemental briefing on whether a different "diligent prosecution" bar, § 1365(b)(1)(B), also applied. The court ultimately ruled that § 1365(b)(1)(B) barred Plaintiff's citizen suit, without reaching the potential application of § 1319(g)(6)(A)(ii), and dismissed the action.

Plaintiff timely appeals.

## DISCUSSION[3]

The Act allows citizens to enforce its standards. 33 U.S.C. § 1365(a)(1). But any of four statutory bars may prohibit a citizen suit if the state or federal government is pursuing enforcement actions with respect to the same alleged violations. 33 U.S.C. §§ 1319(g)(6)(A)(i)–(iii), 1365(b)(1)(B). Defendants argue that two of those statutory bars, §§ 1365(b)(1)(B) and 1319(g)(6)(A)(ii), apply here. For the reasons that follow, we disagree.

### A. Section 1365(b)(1)(B)

The first "diligent prosecution" bar at issue is contained within the same statutory section that authorizes citizen suits to enforce the Act, § 1365, which provides, in relevant part:

> (a) Except as provided in subsection (b) of this section and [33 U.S.C. § 1319(g)(6)], any citizen may commence a civil action on his own behalf—

> (1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this [Act] or (B) an order issued by the [EPA] or a State with respect to such a standard or limitation . . . .

---

[3] We review de novo the district court's order of dismissal. *NRDC, Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1070 (9th Cir. 2011). We also review de novo questions of law, including the interpretation of a statute. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir.), *cert. denied*, 133 S. Ct. 256 (2012).

. . . .

(b)  No [citizen suit under § 1365(a)(1)] may be commenced—

(1) . . . .

. . . .

(B) if [a state or federal authority] has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order . . . .

Our prior decisions clarify two points with respect to the interpretation of § 1365(b)(1)(B).  First, we have held that only an action that is "in a court" triggers the statutory bar; administrative proceedings do not.  *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987).  Second, we have construed the phrase "has commenced and is diligently prosecuting," as it appears in § 1319(g)(6)(A)(ii), though not as it appears in § 1365(b)(1)(B).  In the former context, we have held that the phrase requires an inquiry as to whether the government was diligently prosecuting its action at the time when the citizen filed his or her complaint.  *Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir. 1996); *Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 83 F.3d 1111, 1118 (9th Cir. 1996).  We now extend that construction to the identical statutory phrase, as it

appears in § 1365(b)(1)(B).[4]  *See Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 578 (9th Cir. 2008) (en banc) ("When Congress uses the same text in the same statute, we presume that it intended the same meaning.").

But we have not previously considered what *kinds* of enforcement actions constitute ones "to require compliance" for purposes of the § 1365(b)(1)(B) bar.  Our analysis begins with the text of § 1365.  *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004).  In subsection (a), the statute authorizes a citizen suit against a defendant "who is alleged to be in violation of (A) an effluent standard or limitation under [the Act] or (B) an order issued . . . with respect to such a standard or limitation."  33 U.S.C. § 1365(a)(1).  Then, in subsection (b), the statutory bar refers to government enforcement actions "to require compliance with *the* standard, limitation, or order."  *Id.* § 1365(b)(1)(B) (emphasis added).  Subsection (b)'s reference to "the" clean-water standard makes clear that it must be the same standard, limitation, or

---

[4] Other courts, construing § 1365(b)(1)(B), have reached the same conclusion.  *See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 754–55 (7th Cir. 2004) (holding that "the clear and unambiguous language of § 1365(b)(1)(B) and its uniform interpretation by the courts" require the conclusion that the statute did not bar a citizen suit that was filed several hours before a government enforcement action); *Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 208 (4th Cir. 1985) (per curiam) ("[T]he verb tenses used in subsection (b)(1)(B) and the scheme of the statute demonstrate that the bar was not intended to apply unless the government files suit first (and is diligently prosecuting such suit)."); *Long Island Soundkeeper Fund, Inc. v. N.Y.C. Dep't of Envtl. Prot.*, 27 F. Supp. 2d 380, 383 (E.D.N.Y. 1998) ("The language of this statute 'clearly contemplates action prior to the filing of a citizen suit.'" (quoting *Conn. Fund for Env't v. Job Plating Co.*, 623 F. Supp. 207, 215 (D. Conn. 1985))).

order that is the subject of the citizen suit under subsection (a).

Defendants argue that, to trigger the § 1365(b)(1)(B) bar, it is sufficient that the government action be *comparable* to the one brought under the Act. That view is at odds with the statute. Although the § 1319(g)(6)(A)(ii) bar applies when a state is diligently prosecuting "an action under a State law comparable to [certain actions under the Act]," § 1365(b)(1)(B) contains no reference to comparable state laws. "'[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *United States v. Alghazouli*, 517 F.3d 1179, 1187 (9th Cir. 2008) (alteration in original) (quoting 2A Sutherland, *Statutory Construction* § 46.6 (6th ed. 2006)). Because Congress omitted any reference to "comparable" state standards in § 1365, and because § 1365(b)(1)(B) specifically refers to an action "to require compliance with the standard, limitation, or order" that is the subject of the citizen suit, we hold that its bar applies only if the government's action seeks to do exactly that.

Our conclusion follows not only from the statute's text, but also from consideration of the odd consequences that would result from reading  § 1365(b)(1)(B) to bar citizen enforcement of an NPDES permit when a state enforces its other environmental laws. The Act's "diligent prosecution" bars do not apply when a government seeks enforcement in court of other *federal* environmental laws, such as the Clean Air Act, 42 U.S.C. §§ 7401–7671q, or the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901–6992k. *See* 33 U.S.C. § 1365(a)(1), (b)(1)(B) (limiting statutory bar to enforcement to require compliance

with a "standard, limitation, or order" of the Clean Water Act).  According to Defendants' interpretation, though, a state's enforcement of *state* environmental laws that mirror those federal ones (for example, California's Air Resources Act or Hazardous Waste Control Law) might preclude citizen enforcement of the Clean Water Act, merely because the enforcement action was somehow "comparable" to the citizen suit.  Nothing in the statute suggests that Congress intended that incongruous result, which would give state enforcement greater preclusive effect than parallel federal enforcement of analogous laws.[5]

In this action, Plaintiff alleges that Defendants have violated four conditions of the Permit.  We therefore must determine whether the government's enforcement action sought compliance with the same Clean Water Act standard: that is, the requirement that Defendants' storm water discharges comply with the Permit.  But to answer that question, we must first decide how to determine what the state's previous action sought to do.  In this case, we look to the records from those proceedings:  the pleadings, the parties' briefing, the plea agreement, and the court's

---

[5] We note that this case does not involve a government action to enforce a state law or regulation that, like California's Porter-Cologne Act, itself implements the standards and limitations of the Clean Water Act.  *See Cmty. Ass'n for Restoration of Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (noting that the Act creates citizen standing "to enforce permit conditions based on both EPA-promulgated effluent limitations and state-established standards" (internal quotation marks omitted)).  In such a case, the state-law action could be one to require compliance with the Clean Water Act.

probation order and judgment.[6]   Those documents, all of which predated the filing of this action, show that California has never sought judicial enforcement of the Permit—or, for that matter, of any standard under the Clean Water Act.

The pleadings and briefs in the 2007 and 2008 actions show that the state sought relief for alleged violations of California's air quality laws, Cal. Health & Safety Code §§ 39000–44474; its hazardous waste handling, treatment, and disposal laws, *id.* §§ 25100–25258.2, 25500–25546.5; its occupational licensing requirements for vehicle dismantlers, Cal. Veh. Code §§ 11500–11541; its occupational safety and health laws, Cal. Lab. Code §§ 6300–6719; provisions of its penal code prohibiting contempt of court, general nuisance, and improper waste disposal, Cal. Penal Code §§ 166, 373a, 374.8; its unfair business practices laws, Cal. Bus. & Prof. Code §§ 17000–17101; and its wildlife conservation laws, Cal. Fish & Game Code §§ 5650–5656.   None of those criminal offenses or civil causes of action relates to the Clean Water Act, and none of the government's allegations asserted that Defendants discharged or managed storm water in violation of the Permit.

The plea agreement and probation order that concluded the proceedings in state court confirm that compliance with the Clean Water Act was not a subject of those actions.  The plea agreement purported to settle only the state's claims that were asserted in the complaints, as amended, which it

---

[6] We consider those documents to be relevant in this case.  We do not decide, though, whether it is necessary to review all the same kinds of documents in every case or whether a subset of documents from the state court record may suffice to determine the nature of the state enforcement action in another case.

described as allegations of "dumping of hazardous industrial waste," "endangering the health of employees," and "various hazardous material, waste, and air quality violations." The agreement provided that the state would dismiss some counts and that Defendants would plead no contest to the counts that were not dismissed. The agreement contains no reference to storm water discharges, and none of the counts alleged violations of the Clean Water Act, either as originally stated or as amended.

The scope of the probation order is likewise limited to the government's allegations, as amended. The order lists the fines and fees that correspond to each state-law violation to which Defendants pleaded no contest; none of those penalties is listed as arising from violations of the Clean Water Act. Although the probation order contains a general requirement that Defendants "[o]bey all laws," that boilerplate provision merely requires that Defendants abide by the law as a condition of probation. It did not transform the action into one to enforce the Clean Water Act.

Defendants argue that the 2007 and 2008 actions nonetheless trigger the § 1365(b)(1)(B) bar to citizen enforcement because their probation conditions include the requirement that they comply with the 2008 consent orders issued by the Department of Toxic Substances Control. Under the consent orders, Defendants agreed to "maintain drainage control" at their facilities that meets, at a minimum, "the Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities as adopted by the California State Water Quality Control Board." Defendants assert that the state's 2007 and 2008 enforcement actions thereby had the effect of requiring compliance with the Permit and the Clean Water Act.

The 2008 consent orders themselves do not trigger § 1365(b)(1)(B)'s bar because they are not the result of any action *in a court*. The orders were issued by the Department, pursuant to its authority to issue remedial action orders in response to releases of hazardous substances that present an "imminent or substantial endangerment" to public health, Cal. Health & Safety Code §§ 25358.3(a), 25355.5(a). Because the orders resulted from *administrative* action, not a *judicial* proceeding, they do not trigger § 1365(b)(1)(B), which applies only if the government has undertaken an action "in a court" to enforce the Clean Water Act. *Sierra Club*, 834 F.2d at 1525.

Moreover, the state court considered the Permit requirements mentioned in the 2008 consent orders only to the extent that it made compliance with them a condition of Defendants' probation. Like the "obey all laws" provision, that condition merely requires Defendants to abide by legal obligations *other than* those that the parties litigated before the court. It does not transform the 2007 and 2008 actions into ones to require compliance with the Clean Water Act.[7]

We need not, and do not, decide whether a different result would obtain had the court conditioned Defendants' probation on compliance with orders that *did* seek to enforce the Clean Water Act—such as one issued by the Board under its NPDES enforcement authority. Here, the 2008 consent

---

[7] Consider, by way of analogy, a defendant who is convicted of possession of cocaine and placed on probation. Suppose further that the court includes, as a condition of probation, a requirement that the defendant abide by the terms of a previously entered restraining order. The inclusion of such a condition does not turn the *present* proceeding into one that is designed to enforce the restraining order, as distinct from one that is designed to enforce the drug laws.

orders expressly intend to mitigate human risks of on-site exposure through skin contact, inhalation of fumes, and ingestion of dust. They do not refer to effluent limitations or to the discharge of pollution into navigable waters, which is the concern of the Clean Water Act, *see* 33 U.S.C. §§ 1311, 1362(12) (prohibiting discharges of pollutants into navigable waters). Indeed, the record shows affirmatively that the 2008 orders did not enforce, or seek to enforce, the Act. According to the declaration of Leona Winner, a scientist from the Department, other state regulatory agencies have primary authority to enforce the Act and the Department did not study surface water quality or issue the 2008 consent orders to address discharges into surface waters. In context, the orders' isolated reference to the Permit does not constitute "diligent prosecution" of the Clean Water Act. *See Friends of Milwaukee's Rivers*, 382 F.3d at 759 (holding that the term "diligent prosecution" requires that the government action is *both* "capable of requiring compliance" with the Act *and* "calculated to do so" (internal quotation marks omitted)). Thus, even if a plea agreement or probation condition that requires compliance with an administrative order may, in some cases, constitute action in court to enforce the Act, that plainly is not true here.

In sum, because the 2007 and 2008 proceedings aimed to enforce only laws other than the Clean Water Act, § 1365(b)(1)(B) does not bar this action.

## B. Section 1319(g)(6)(A)(ii)

The second statutory bar at issue, § 1319(g)(6)(A)(ii), provides that "any violation . . . with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection . . . shall not be the

subject of a [citizen suit] civil penalty action." As previously noted, whether a state's enforcement action meets the statute's requirements is assessed as of the time the citizen-suit complaint is filed. *Knee Deep*, 94 F.3d at 516.

Defendants argue that § 1319(g)(6)(A)(ii) bars this action because they have been prosecuted under California statutes that provide for penalties, *see, e.g.*, Cal. Health & Safety Code § 25189, and because violation of the 2008 consent orders will render them liable for administrative penalties, *see, e.g.*, *id.* §§ 25359.2, 25359.3. We hold that neither the state's actions in court nor the Department's consent orders trigger § 1319(g)(6)(A)(ii).

Section 1319(g)(6)(A)(ii) does not apply on account of the state's actions in court, which resulted in criminal penalties and probation, because those civil and criminal actions were not *administrative* proceedings. The statutory bar applies only when a state has pursued an action that is "comparable to this subsection." Subsection 1319(g) sets forth the standards and procedures by which the EPA may assess administrative penalties only; the Act's criminal and civil penalties and enforcement procedures are set forth in subsections 1319(a)–(d). Thus, the state's successful prosecution of the 2007 and 2008 actions in court, and the court's assessment of criminal fines in those actions, do not trigger the statutory bar even if the state laws under which the penalties were assessed were "comparable" to the Clean Water Act in a general sense.[8]

---

[8] As explained with respect to the § 1365(b)(1)(B) statutory bar, those laws include California's hazardous waste laws, occupational safety laws, and air quality laws. Those laws are not substantially comparable to the Clean Water Act's effluent limitations and water-quality standards.

Nor do the 2008 consent orders trigger § 1319(g)(6)(A)'s bar to citizen enforcement.  We have held that a state administrative action must seek and assess administrative penalties to trigger the § 1319(g)(6)(A) bar.  *Knee Deep*, 94 F.3d at 516 ("[F]or § 1319(g)(6)(A) to apply, the comparable state law must contain penalty provisions and a penalty must actually have been assessed under the state law." (citing *Citizens for a Better Env't v. UNOCAL*, 83 F.3d 1111, 1115 (9th Cir. 1996))); *cf. Wash. Pub. Interest Research Grp. v. Pendleton Woolen Mills*, 11 F.3d 883, 885–87 (9th Cir. 1993) (holding that an administrative compliance order issued by the EPA did not trigger the § 1319(g)(6)(A)(i) bar, which applies if the EPA has commenced federal administrative penalty proceedings under § 1319(g)).  In other words, "the comparable state law must contain penalty provisions and a penalty must actually have been assessed under the state law."  *Knee Deep*, 94 F.3d at 516.  Although the 2008 consent orders notify Defendants that they "may be liable for penalties" in the future if they fail to comply with the terms of those orders, *see* Cal. Health & Safety Code § 25359.2 (providing that the failure to comply with a remedial action order may result in administrative penalties), the state did not actually assess any penalties in the orders themselves.  Thus, even if the cited provision of the Health and Safety Code might be "comparable" to § 1319(g) for these purposes, Defendants' *potential* liability under the consent orders does not trigger the bar of § 1319(g)(6)(A)(ii).

Because California has commenced no administrative penalty proceeding that is comparable to a proceeding by the EPA under § 1319(g), the statutory bar of § 1319(g)(6)(A)(ii) does not apply to Plaintiff's claims.

## CONCLUSION

Because the state has brought neither a court action to require compliance with the Clean Water Act nor an administrative penalty action comparable to one under the Act, neither 33 U.S.C. § 1365(b)(1)(B) nor § 1319(g)(6)(A)(ii) bars Plaintiff's citizen suit to enforce California's storm water general permit.

**REVERSED and REMANDED.**